W. EUGENE DAVIS, Circuit Judge:
In this case, we review the determination of the Benefits Review Board (“BRB”) that the claimant, Juan Zepeda, was entitled to compensation benefits under the Longshore and Harbor Workers’ Compensation Act (“LHWCA” or “the Act”), from. Petitioner New Orleans Depot Services, Inc. (“NODSI”).
In particular, the BRB found that the claimant’s employment activities with NODSI took place in an area or location “adjoining” navigable waters “customarily used by an employer in loading [or] unloading ... a vessel” [1] and therefore NOD-SI’s facility met the situs requirement of the Act. We conclude that because the NODSI facility where Mr. Zepeda worked did not border on navigable waters, it was not a covered situs and Mr. Zepeda is entitled to no benefits under the Act from Petitioner NODSI. We therefore vacate the award of the BRB as against NODSI and remand for further proceedings.
I. Facts
The claimant, Mr. Zepeda, filed-a claim for LHWCA benefits against one of his prior employers, New Orleans Marine Contractors (“NOMC”), to recover benefits for his hearing loss due to continuous exposure to loud noises. As a defense, NOMC contended that NODSI was a subsequent maritime employer and that NOD-SI rather than NOMC was therefore the responsible party.[2] The issue then presented to the Administrative Law Judge (“ALJ”) and BRB was whether NODSI was responsible as a subsequent employer for benefits under the LHWCA. NOMC then, in effect, prosecuted Mr. Zepeda’s claim against NODSI so that NOMC would avoid its liability to him.
Following his employment with NOMC, Mr. Zepeda was employed by the Petitioner, NODSI, at its “Chef Yard” facility on the Chef Menteur Highway in New Orleans. NODSI and its employees were engaged in the repair, maintenance, and storage of shipping containers and chassis.[3] Some of the containers had been used to transport ocean cargo. NODSI had more than one facility, but the Chef Yard facility is the only facility relevant to this appeal. The Chef Yard, with access to the Chef Menteur Highway and rail transportation, can best be described as a small industrial park. The Chef Yard is located approximately 300 yards from the Intracoastal Canal and is surrounded by a carwash, a radiator shop, an automobile *387 repaii’ shop, a bottling company, and a company that manufactures boxes. The bottling company’s facility is located between the Intracoastal Waterway and the Chef Yard.
NODSI employees worked only within NODSI’s facility as they repaired or performed maintenance on containers and chassis. They had no access to the Intra-coastal Canal and all of the equipment NODSI serviced was delivered to the Chef Yard by truck. Once NODSI completed repairs to the equipment, it was picked up by truck or rail, and no containers were loaded with cargo while in NODSI’s custody-
11.Procedural Background
The ALJ, after conducting a hearing in this case, found that some of the containers repaired and maintained by NODSI employees had been used for marine transportation and off-loaded at the port of New Orleans. Representatives of Evergreen, NODSI’s customer, also stated that at least some of the containers would be returned to service as marine containers. The ALJ concluded that the NODSI Chef Yard employees’ work repairing ocean containers was “a process which was a significant maritime activity” necessary to loading and unloading cargo. In addition, the ALJ concluded that the location of the NODSI Chef Yard located some 300 yards from the Intracoastal Canal satisfied the situs requirement that the injury occur in an area “adjoining navigable waters.” Also, the ALJ found that the repair work and maintenance Mr. Zepeda performed on these containers was closely related to loading or unloading vessels and constituted “maritime employment” which satisfied the status test under the Act.
The BRB affirmed the ALJ’s order and a divided panel of this court affirmed the BRB. We then voted this case en banc, primarily to consider the BRB’s determination that Mr. Zepeda was injured in an area “adjoining navigable waters” so as to satisfy the Act’s situs test.
III.Standard of Review
Because the LHWCA situs inquiry requires the application of a statutory standard to case-specific facts, it is ordinarily a mixed question of law and fact. However, where, as in this case, the facts are not in dispute, “[LHWCA] coverage is an issue of statutory construction and legislative intent,” and should be reviewed as a pure question of law. See DOWCP v. Perini North River Associates, 459 U.S. 297, 300, 305, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983). We therefore review the BRB’s determination of coverage under the LHWCA in this case de novo. Equitable Equip. Co. v. DOWCP, 191 F.3d 630, 631 (5th Cir.1999) (citation omitted).
IV.Analysis
A.
Before turning to the merits of this appeal, we first consider a preliminary objection the Respondent raises. The Director argues that NODSI has waived the argument that Mr. Zepeda failed to establish that he met the situs requirement of the Act — i.e., that his injury occurred in an area “adjoining navigable waters” — by failing to raise it before the BRB or the panel of this court that heard the appeal. Specifically, the Director argues that NODSI cannot argue that this en banc Court should adopt a new interpretation of “adjoining” when it failed to make the argument before two previous tribunals.
Generally, we do not consider issues on appeal that were not presented and argued before the lower court. See Lampton v. Diaz, 639 F.3d 223, 227 n. 14 (5th Cir.2011). “The waiver rule exists to *388 prevent an appellate court from ‘[analyzing] the facts of a particular [issue] without the benefit of a full record or lower court determination.’ ” Id.[4] In its opening brief to the panel of this court that initially heard the appeal, NODSI only challenged the functional component[5] of the situs requirement and acknowledged that our caselaw foreclosed consideration of the geographic component.[6] However, this is not a case in which a party has wholly ignored a major issue. The issue of LHWCA situs has been contested throughout the case’s history, with the proper application of “adjoining area” being squarely addressed by both the ALJ and the BRB. NODSI’s recognition of the fact that it was bound by this Court’s current interpretation of “adjoining” does not deprive us of the right to visit the issue.
Moreover, a well-settled discretionary exception to the waiver rule exists where a disputed issue concerns “a pure question of law.” Texas v. United States, 730 F.2d 339, 358 n. 35 (5th Cir.1984); see also Atl. Mut. Ins. Co. v. Truck Ins. Exch., 797 F.2d 1288, 1293 (5th Cir.1986). In this case, the ALJ, after a full hearing, resolved the factual disputes presented by the parties. At the hearing, witnesses testified about the nature of the industrial park where NODSI’s operations were conducted, the nature of NODSI’s work, and the relationship of the work to maritime activities. The evidence was undisputed that NOD-SI’s Chef Yard is located about 300 yards from the Intracoastal Canal, and that a bottling plant is located on the tract of land between the Canal and NODSI’s yard.
Because the legal issue of whether the location of the claimant’s injury “adjoined” navigable waters was presented to the ALJ and the facts involving this issue were fully litigated before the ALJ, we are left with a pure question of law to decide. Moreover, every party was provided an adequate opportunity to brief and argue the issue before the en banc court. Therefore, notwithstanding NODSI’s failure to challenge our governing precedent before the BRB or our panel, we exercise our discretion to decide this legal issue: whether, under these undisputed facts, claimant was injured in an area adjoining navigable waters so as to satisfy the LHWCA situs requirement. We now turn to the merits of the appeal.
B.
Before 1972, coverage under the LHWCA was provided only if the injury occurred on navigable waters. This “si-tus” requirement was strictly enforced.[7] However, by its nature, loading and unloading a vessel required a longshoreman to continuously go from ship to wharf and *389 back again, and a longshoreman might work part of the day aboard the ship and the rest of the day on the pier.[8] Similar movement by workers from vessel to dock also occurred in vessel repair work. When Congress made extensive amendments to the Act in 1972, it expressed concern about longshoremen walking in and out of coverage and, to meet this concern, broadened coverage by amending LHWCA § 903(a).[9]
Congress made another change in the 1972 amendments by adding a status requirement, thus limiting LHWCA coverage to traditional maritime occupations. This was accomplished by defining a covered “employee” as “any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker.” 33 U.S.C. § 902(3).
The Supreme Court has made it clear that “situs” and “status” are separate, independent elements and that a claimant must establish both elements to recover benefits.[10]
C.
The LHWCA only extends coverage to “injurfies] occurring upon the navigable waters of the United States (including any adjoining pier, wharf ... or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).” 33 U.S.C. § 903(a) (emphasis added).
Most courts addressing this issue understand that an “other adjoining area” must satisfy two distinct situs components: (1) a geographic component (the area must adjoin navigable waters) and (2) a functional component (the area must be “customarily used by an employer in loading [or] unloading ... a vessel”).[11] We took this case en banc primarily to decide whether the claimant was injured in an area “adjoining” navigable waters.
In 1980, our en banc court interpreted the geographic component of situs in Tex-ports Stevedore Co. v. Winchester, 632 F.2d 504 (5th Cir.1980) (en banc). In that case, Mr. Winchester was injured when he fell in his employer’s gear room. He and others at that facility were engaged in repairing and maintaining gear used by longshoremen in loading and unloading vessels. The gear room in question was located five blocks from the gate of the nearest Houston port dock. In holding that the employee met the situs requirement and was entitled to benefits, the court stated:
Although “adjoin” can be defined as “contiguous to” or “to border upon,” it also is defined as “to be close to” or “to *390 be near.” “Adjoining” can mean “neighboring.” To instill in the term its broader meanings is in keeping with the spirit of the congressional purposes. So long as the site is close to or in the vicinity of navigable waters, or in a neighboring area, an employee’s injury can come within the LHWA. To require absolute contiguity would be to reenact the hard lines that caused longshoremen to move continually in and out of coverage.
Id. at 514 (footnotes omitted).
The Winchester court stressed the desirability of avoiding any hard line for defining what is “adjoining.” Rather, “[t]he situs requirement compels a factual determination that cannot be hedged by the labels placed on an area.” Id. at 513. “The best way to effectuate the congressional purposes is to determine the situs question by looking at all the circumstances.” Id. Other than these vague instructions, the court provided little guidance to other courts or future litigants on how to determine from “the circumstances” whether a claimant satisfies the situs test. This is apparent from the court’s statement: “[0]uter limits of the maritime area will not be extended to extremes. We would not extend coverage in this case to downtown Houston. The site must have some nexus with the waterfront.” [12] Id. at 514. The court then concluded that the injured employee was within a situs protected by the LHWCA. Id. at 516. We have followed the Winchester analysis in a number of cases.[13]
Our sister circuits have taken varying positions on the interpretation of “other adjoining areas.”
In Brady-Hamilton Stevedore Co. v. Herron, 568 F.2d 137, 139 (9th Cir.1978), an employee was injured while unloading steel plates from a truck parked at the employer’s gear locker, located some 2,600 feet north of the Columbia River and outside the entrance gate of the port of Long-view. The Ninth Circuit concluded:
[T]he phrase “adjoining area” should be read to describe a functional relationship that does not in all cases depend upon physical contiguity. Consideration should be given to the following factors, among others, in determining whether or not a site is an “adjoining area” under section 903(a): the particular suitability of the site for the maritime uses referred to in the statute; whether adjoining properties are devoted primarily to uses in maritime commerce; the proximity of the site to the waterway; and whether the site is as close to the waterway as is feasible given all of the circumstances in the case.
Id. at 141.[14]
In Sea-Land Service, Inc. v. DOWCP, 540 F.2d 629 (3d Cir.1976), an employee *391 was using a truck to move cargo that had been unloaded from a vessel to a building, so it could be further transported to a more permanent location. The employee was injured on a public street in an area outside the terminal that was not under the employer’s control. Id. at 632. The court held that the restriction on coverage to an “other adjoining area” did not preclude coverage to this employee. The court found situs had been established and stated, “[t]he key is the functional relationship of the employee’s activity to maritime transportation, as distinguished from such land-based activities as trucking, railroading or warehousing.”[15] Id. at 638.
In contrast, the Fourth Circuit has taken a much different approach — an approach that adheres more faithfully to the plain language of the statute. In Sidwell v. Express Container Services, Inc., 71 F.3d 1134 (4th Cir.1995), the facts were almost identical to the facts in the instant case. The plaintiff was a shipping container mechanic who sought to recover benefits under the Act after he was injured while repairing a container. Id. at 1135. His injury occurred at his employer’s facility located approximately .8 miles from the closest ship terminal in an area with diverse, non-maritime commercial and residential facilities. Id.
In deciding whether the employer’s container repair facility was an “adjoining area,” the Fourth Circuit recognized that the Supreme Court had not defined the term, but that the Third, Fifth, and Ninth Circuits had each adopted expansive, yet differing approaches. Id. at 1136-37. After reviewing these cases, the Sidwell court stated, “Because none of these proffered tests even purports to follow the language of the statute — indeed, for the most part they all openly disavow the statutory text — we decline to adopt any of these tests.” Id. at 1138. The court held:
The plain language of the LHWCA requires that covered situses actually “adjoin” navigable waters, not ... that they merely be in “the general geographic proximity” of the waterfront. Because Congress did not specify a more technical definition of the word “adjoining” (if that is even possible), we must accord that word its ordinary meaning, as, incidentally, the legislative history confirms Congress intended. To be sure, dictionaries do include “neighboring” and “in the vicinity of’ as possible definitions of “adjoining,” but such is not the ordinary meaning of the word; rather, the ordinary meaning of “adjoin” is “to lie next to,” to “be in contact with,” to “abut upon,” or to be “touching or bounding at some point.”
Id. (footnotes omitted) (citations omitted).
The Sidwell court found support for its interpretation from the House Report on the 1972 amendments: “The bill also expands the coverage of this Act to cover injuries occurring in the contiguous dock area related to longshore and ship repair work.”[16]
Responding to the argument that the word “adjoining” should be given a broad meaning so as to accommodate Congress’s *392 concerns about workers moving in and out of coverage, the Sidwell court stated:
*391 "The [Third] Circuit appears to have essentially discarded the situs test, holding that only ‘(an) employment nexus (status) with marine activity is (necessary)’ and that the situs of the maritime employee at the time of injury is irrelevant.” 432 U.S. at 278 n. 40, 97 S.Ct. 2348 (quoting Sea-Land Serv., Inc., 540 F.2d at 638) (citations omitted).
*392 The LHWCA was enacted to address a specific problem, and the actual language that Congress chose does just that. The problem, as we have explained, was that longshorem[e]n loading and unloading ships walked in and out of LHWCA coverage as they walked the gangplank from ship to shore. In response, Congress extended coverage to both navigable waters and “the adjoining land area,” S. Rep. 92-1125, 92d Cong., 2d Sess. 13 (1972), so that the longshoremen at both ends of the gangplank would be covered equally by the LHWCA. As the Supreme Court has repeatedly stated, “Congress intended that a worker’s eligibility for federal benefits would not depend upon whether he was injured while walking down a gangway or while taking his first step onto the land”, P.C. Pfeiffer, 444 U.S. at 75, 100 S.Ct. [328]; rather, coverage would extend to “the waterfront areas where the overall loading and unloading process occurs.” Northeast Marine, 432 U.S. at 272, 97 S.Ct. [2348]; see also Herb’s Welding, 470 U.S. at 423, 105 S.Ct. 1421 (explaining that Congress expanded coverage to include “rather large shoreside areas” (emphasis added)). The definition we adopt today ensures coverage for all maritime employees injured in the waterfront areas where the loading, unloading, and repair of vessels occurs, as Congress plainly intended and as the Supreme Court has directed.
Id. at 1140.
The court made clear that its literal definition of adjoining could not be circumvented by a broad interpretation of “area.”
Thus, an “other adjoining area” as to which coverage extends must be like a “pier,” “wharf,” “dry dock,” “terminal,” “building way,” or “marine railway.” Each of these enumerated “areas” is a discrete structure or facility, the very raison d’etre of which is its use in connection with navigable waters. Therefore, in order for an area to constitute an “other area” under the statute, it must be a discrete shoreside structure or facility.
Id. at 1139 (emphasis in original) (footnote omitted).
The court also indicated that it is the parcel of land underlying the employer’s facility that must adjoin navigable waters, not the particular part of that parcel upon which a claimant is injured. The court quoted our language in Alabama Dry Dock & Shipbuilding Co. v. Kininess to demonstrate this point:
[The back lot upon which a crane was located by which claimant was injured was somewhere] from 150 to 2,000 feet from the water’s edge. In any event, the physical distance is not decisive here. The test is whether the situs is within a contiguous shipbuilding area which adjoins the water. Alabama Dry Dock’s shipyard adjoins the water. The lot was part of the shipyard, and was not separated from the waters by facilities not used for shipbuilding.
Id. at 1140 n. 11 (alteration in original) (quoting Ala. Dry Dock, 554 F.2d 176, 178 (5th Cir.1977)).
Finally, the Sidwell court determined that Congress further restricted the definition of “situs” by requiring the area to be: “customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel.” 33 U.S.C. § 903(a). An “other adjoining area” seeking coverage as an LHWCA-covered situs must therefore satisfy both a geographic and a functional component. The court criticized other circuit courts such as the Third Circuit Sea-Land court, which suggested that the functional component (an area custom *393 arily used for designated maritime purposes) should be dispositive of the situs inquiry. The court stated:
This language, however, is a further restriction upon “other adjoining areas”— implying that there are areas adjoining navigable waters that nonetheless do not meet the situs requirement because they are not customarily so used — not an implicit elimination of the requirement that the area first be adjoining navigable waters.[17] In any event, reading the language in the manner proposed by the Director collapses the separate status and situs requirements into a single inquiry into status, in contravention of the Supreme Court’s injunctions in Herb’s Welding and P.C. Pfeiffer that we not read the status and situs requirements as one and the same.
Sidivell, 71 F.3d at 1139-40 n. 10 (citations omitted).
In response to Sidwell’s reasoning, the Director has advanced two primary arguments for avoiding the plain meaning of “adjoining.” First, the Director argues that a broad definition of “adjoin” furthers the congressional goal of preventing longshoremen from walking in and out of coverage. By reading “adjoining” broadly, longshoremen would less frequently exit and enter the perimeters of LHWCA coverage. However, as the Sidwell court explained, Congress’s primary concern was that longshoremen constantly walked the gangplank between the ship and the dock so that the worker injured on the dock was not covered under the LHWCA and his coworker injured on the ship was covered. This loss of coverage when a longshoreman crossed the ship’s gangplank was the inequity Congress sought to cure.[18]
Moreover, by adopting a situs requirement, Congress obviously recognized that a longshoreman could still leave and reenter the geographic bounds of LHWCA coverage. As the Court in Herb’s Welding stated: “[Tjhere will always be a boundary to coverage, and there will always be people who cross it during their employment. If that phenomenon was enough to require coverage, the Act would have to reach much further than anyone argues that it does or should.” 470 U.S. at 426-27, 105 S.Ct. 1421 (citation omitted).
The Director also argues that as a compensation statute, the LHWCA should be construed liberally in favor of coverage. See Ne. Marine, 432 U.S. at 268, 97 S.Ct. 2348. However, the first rule of statutory construction is that we may not ignore the plain language of a statute. See Matter of Appletree Markets, Inc., 19 F.3d 969, 974 (5th Cir.1994) (“[T]o ignore the plain language of the statute would be to substitute improperly our own policy predilections for the express intent of Congress.”). The LHWCA dictates that a covered situs actually adjoin navigable waters, and we may not ignore this limitation.
V. Conclusion
For the reasons stated above, we adopt the Sidwell definition of “adjoining” navigable water to mean “border on” or *394 “be contiguous with” navigable waters.[19] We, therefore, overrule the contrary definition and analysis of Winchester and its progeny inconsistent with this opinion. We adopt this definition primarily because it is more faithful to the plain language of the statute. We are also influenced by the fact that the vague definition of “adjoining” we adopted thirty years ago in Winchester provides litigants and courts, in cases such as this one, with little guidance in determining whether coverage is provided by the Act.[20] More than perhaps any other statutory scheme, a worker’s compensation statute should be “geared toward a nonlitigious, speedy, sure resolution of the compensation claims of injured workers.” Winchester, 632 F.2d at 518 (Tjoflat, J., dissenting). One could hardly imagine an area where predictability is more important.
Applying the Sidwell definition of “adjoining” to the instant case, there is no dispute that the Chef Yard where Mr. Zepeda’s injury occurred did not adjoin navigable waters. Because the Chef Yard did not border upon and was not contiguous with navigable waters, it is not an LHWCA-covered situs.[21]
For these reasons we VACATE the award of the BRB against NODSI and REMAND for further proceedings as necessary against the alternate employer, New Orleans Marine Contractors.
VACATED AND REMANDED.

.33 U.S.C.-§ 903(a) provides:
[(Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).

. “When the disability arises from an ‘occupational injury’ incurred while working for different employers, the last employer who exposes the claimant to the injury-causing condition may be responsible for all of the benefits.’’ Frank L. Maraist et al., Admiralty in a Nutshell 291 (6th ed.2010) (citing Avondale Indus., Inc. v. DOWCP, 977 F.2d 186 (5th Cir.1992)).

. A chassis is what we ordinarily consider the trailer portion of the 18-wheeler unit on which shipping containers are loaded and transported by truck.

. (Alterations in original) (quoting 19 James W. Moore et al., Moore’s Federal Practice § 205.0511], at 205-57 (3d ed.2011) (quoting Yee v. City of Escondido, 503 U.S. 519, 538, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992))).

. The injury must occur in an area “customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel.” See 33 U.S.C. § 903(a).

. The injury must occur "upon the navigable waters of the United States ... or other adjoining area.” See 33 U.S.C. § 903(a).

. See, e.g., Victory Carriers, Inc. v. Law, 404 U.S. 202, 209-12, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971) (longshoreman injured on pier while operating cargo forklift not in covered situs); Nacirema Operating Co. v. Johnson, 396 U.S. 212, 223, 90 S.Ct. 347, 24 L.Ed.2d 371 (1969) (longshoremen injured on pier while attaching cargo to ship’s cranes not in covered situs).

. See Ne. Marine Terminal Co. v. Caputo, 432 U.S. 249, 272-74, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977).

. Section 903 was amended, in part, to provide compensation "if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf ... or other adjoining area customarily used hy an employer in loading, unloading, repairing, dismantling, or building a vessel).” 33 U.S.C. § 903(a) (emphasis added).

. See Herb’s Welding, Inc. v. Gray, 470 U.S. 414, 415-16, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985); P.C. Pfeiffer Co. v. Ford, 444 U.S. 69, 73-74, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979); see also King v. Universal Elec. Constr., 799 F.2d 1073, 1073-74 (5th Cir.1986); Valladolid v. Pac. Operations Offshore, LLP, 604 F.3d 1126, 1140 (9th Cir.2010); Jonathan Corp. v. Brickhouse, 142 F.3d 217, 220 (4th Cir.1998).

. See, e.g., Coastal Prod. Servs. Inc. v. Hudson, 555 F.3d 426, 432 (5th Cir.2009); Sidwell v. Express Container Servs., Inc., 71 F.3d 1134, 1139 (4th Cir.1995); Hurston v. DOWCP, 989 F.2d 1547, 1549 (9th Cir.1993).

. At oral argument, we learned that the port of Houston is approximately 5 miles from downtown Houston. Counsel for the Director was unable to tell us how the claimant or the employer would determine — short of trial— whether, in Winchester, if the injury had occurred 1 mile or 2 miles from the port of Houston, the claimant would have been injured in an area adjoining navigable waters.

. See Coastal Prod. Servs. Inc., 555 F.3d at 432-37; Reynolds v. Ingalls Shipbuilding Div., Litton Sys., Inc., 788 F.2d 264, 272 (5th Cir. 1986), overruled on other grounds by Stewart v. Dutra Const. Co., 543 U.S. 481, 496, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005); Alford v. Am. Bridge Div. U.S. Steel Corp., 642 F.2d 807, 814 (5th Cir.1981), vacated in part on reh’g, 655 F.2d 86 (5th Cir.1981).

.In Cunningham v. DOWCP, 377 F.3d 98, 101 (1st Cir.2004), the First Circuit considered coverage for an injury to a pipe fitter who worked at the manufacturing facility of his employer located some 3.5 miles from the employer’s shipyards where pipe units were installed on ships. The court held that it had not determined a methodology for approaching the question of "adjoining area,” but assumed the correctness of the Ninth Circuit’s *391 broad approach because it was clear that LHWCA coverage was foreclosed in any case. Id. at 105.

. The Supreme Court, in Northeast Marine, criticized this opinion when it stated:

. S.Rep. No.92-1125, 92d Cong., 2d Sess. 2 (1972) (emphasis added).

. We disagree with Winchester's holding that even an injury that occurred in a facility that did not border on navigable waters nevertheless satisfied the situs test if the "area” was customarily used for loading and unloading or some other designated maritime purpose. See Winchester, 632 F.2d at 515.

. See P.C. Pfeiffer Co., 444 U.S. at 75, 100 S.Ct. 328 ("By enlarging the covered situs ..., Congress intended that a worker's eligibility for federal benefits would not depend on whether he was injured while walking down a gangway or while taking his first step onto the land.”); see also Chesapeake & Ohio Ry. Co. v. Schwalb, 493 U.S. 40, 46, 110 S.Ct. 381, 107 L.Ed.2d 278 (1989).

. See also Bryan Garner, Garner’s Dictionary of Legal Usage 25 (3d ed. 2011) ("Etymologically, adjoining means 'directly abutting; contiguous' .... ”).

. Also, as demonstrated by this case, our former vague definition of "adjoining area” makes it difficult for an employer to know whether it should purchase insurance coverage for injuries under the Act.

. Because we determine that the Act's situs requirement is not satisfied in this case, we need not address the question of whether Mr. Zepeda’s employment activities would satisfy the Act’s status requirement.