**GLOBAL MANAGEMENT ENTERPRISES, LLC, Plaintiff–Appellant**

v.

**COMMERCE & INDUSTRY INSURANCE COMPANY, Defendant–Appellee.**

No. 13–31249
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 23, 2014.

---

Edward J. Fonti, Jones, Tete, Fonti & Belfour, L.L.P., Lake Charles, LA, for Plaintiff–Appellant.

Robert I. Siegel, Matthew F. Morgan, Gieger, Laborde & Laperouse, L.L.C., New Orleans, LA, for Defendant–Appellee.

Before DAVIS, BENAVIDES, and PRADO, Circuit Judges.

PER CURIAM: *

Before the court is a dispute as to whether an employee's injury is covered by a workers' compensation policy that excludes work "subject to" the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 900, *et seq.* The district court entered summary judgment in favor of the workers' compensation carrier. We reverse.

The material facts are not in dispute. Global Management Enterprise ("Global") is a temporary employment agency that provides short-term workers for various construction and industrial purposes. Commerce and Industry Insurance Company (d/b/a "Chartis") is Global's workers' compensation insurance carrier. In the months following the *Deepwater Horizon* oil spill, Global hired a number of workers to assist with clean-up efforts in and around the Gulf of Mexico. On August 21, 2010, Global employee Librado De La Cruz was allegedly injured while lifting a bag of oil-laden sand that would later be loaded onto a truck and transferred to a vessel for removal. It is undisputed that De La Cruz spent up to two hours actively loading and unloading the vessel at the pier, and six or seven hours cleaning the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

beaches. At the time of the incident, De La Cruz was working on a beach located a few feet from Gulf waters and around a half-mile from the pier at which the vessel was docked.

After the incident, Chartis accepted De La Cruz's workers' compensation claim and began payment of benefits. Unbeknownst to Chartis, De La Cruz also applied for benefits under the Longshoreman and Harbor Workers Compensation Act ("the LHWCA" or "the Act"). He ultimately withdrew that application such that the question of coverage was never adjudicated by the federal agency. Nevertheless, Chartis ceased workers' compensation payments, citing the policy's longshoreman exclusion.[1] Following the cessation of payments, Global filed the present action against Chartis, alleging breach of contract, negligence, and bad faith. Chartis moved for summary judgment on all claims, arguing, *inter alia,* that the injury is subject to the policy exclusion. Finding no dispute as to the issue, the district court granted summary judgment on all claims. On appeal, this court vacated judgment and ordered the district court to reconsider the motion in light of a new precedent, *New Orleans Depot Services v. Worker's Compensation Programs,* 718 F.3d 384 (5th Cir.2013) (en banc). After reviewing the case in accordance with our instructions, the district court again entered summary judgment in favor of Chartis. Global filed timely appeal.

We review summary judgment *de novo,* applying the same standard as the district court. *Kimberly–Clark Corp. v. Factory Mut. Ins. Co.,* 566 F.3d 541, 544 (5th Cir. 2009). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to material fact." FED. R. CIV. P. 56(a).

The sole issue on appeal is whether De La Cruz sustained the alleged injury at a location covered by the Act.[2] Benefits under the LHWCA extend only to "injur[ies] occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a). Accordingly, for a worksite to be reached by the LHWCA, it must (1) adjoin navigable waters; and (2) customarily be used by an employer to facilitate one of the listed maritime activities. *Depot,* 718 F.3d at 389 (citation omitted). There is no dispute that the incident occurred at a site adjoining navigable waters—De La Cruz was working at a beach on an island in the Gulf of Mexico. The only question is whether the beach is a location customarily used by an employer for a covered activity. We conclude that it is not.

The beach upon which De La Cruz was allegedly injured is not a site customarily used for longshore work. There were no structures on the beach, which was located on a remote island known only as G1. Chartis provides no evidence that the

---

1. The policy excludes "bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 U.S.C. Sections 901–950) [sic]." Although this provision does not track the statutory language, both of the parties read the exclusion as referring to injuries covered by the LHWCA. Under Louisiana law, this court's ultimate responsibility is to construe a con-

tract so as to reflect the "common intent of the parties." LA. CIV CODE art. 2045. We therefore accept the parties' interpretation of the exclusion.

2. Because our resolution of the situs question is dispositive of LHWCA coverage, we express no opinion as to "employee" status under 33 U.S.C. § 902(3).

beach had ever been used by longshoremen, and Global's crews did not work in any longshore capacity there. Instead, they gathered spill-related debris and refuse into bags. The bags were thrown into a designated area and were later loaded onto a truck for daily transport to a vessel for removal. Per uncontested testimony, the only other activity that took place on the beach was the daily erection of the crew's lunch tent. So the injury was not sustained at a location customarily used for "loading, unloading, repairing, dismantling, or building a vessel," as required for the statute to apply. 33 U.S.C. § 903(a).

Chartis nevertheless argues that the beach's customary use should be determined in light of the crew's daily use of the pier at which the working vessel was docked. Every evening the crew would drive back to this pier and assist the sailors in loading the vessel. Chartis suggests, then, that the beach and the pier together serve as a single area customarily used for longshore activities. We recognize that a single longshore facility may comprise several distinct areas. *See generally Coastal Prod. Servs. Inc. v. Hudson,* 555 F.3d 426 (5th Cir.2009). When an injury occurs in a distinct part of a larger facility, the situs is not evaluated by reference to fences or labels alone. *Id.* at 434 n. 26. Instead, this court considers whether the site of the injury "is within a contiguous shipbuilding [i.e., longshore] area which adjoins the water." *Ala. Dry Dock & Shipbuilding Co. v. Kininess,* 554 F.2d 176, 178 (5th Cir.1977). If so, the accident site comes within the purview of the Act. For example, a longshoreman is not exempt from coverage just because he sustains injury in a shipyard's back lot instead of in the area used exclusively for shipbuilding or loading. *Id.*

Similarly, an oil processing platform is part of a larger longshore facility where it is 40 feet from a transfer barge and "interconnected" with the areas used for loading. *Coastal Prod.,* 555 F.3d at 439. *Coastal Production* involved an injury sustained on a large platform that included living quarters, a processing facility, and storage areas. *Id.* at 428. The platform abutted navigable waters and was connected to a transfer barge via a walkway and oil pipes. *Id.* at 429. Oil was not loaded onto vessels directly from the platform, but instead from the nearby barge. *Id.* at 434. When a platform operator was injured and filed for benefits under the LHWCA, the carrier contested coverage, arguing that the injury was not sustained on a covered situs. *Id.* at 429. We ultimately rejected the carrier's argument, finding the platform's "proximity" to the barge and its "interconnectedness" with the loading area sufficient to establish the platform as a component of a " 'general area' used as part of the 'overall loading process.' " *Id.* at 439 (quoting *Texports Stevedore Co. v. Winchester,* 632 F.2d 504, 515 (5th Cir. 1980) (en banc), *overruled in part by Depot,* 718 F.3d 384).[3]

Chartis's argument fails because the beach and dock are not interconnected parts of a larger area used to facilitate longshore activity. First, the beach and dock did not compose a single contiguous entity. Undisputed testimony indicates

---

**3.** In overruling *Winchester*'s analysis of the geographic component of situs, we only abrogated *Winchester* and its progeny insofar as they are inconsistent with the adjacency standard established in *Depot Services. See Depot,* 718 F.3d at 394 ("We, therefore, overrule the contrary definition and analysis of *Winchester* and its progeny inconsistent with this opinion."). *Winchester* includes a brief discussion of the functional "customary use" component of situs. That discussion remains binding precedent and is the source of the language quoted in the illustrated case.

that the pier and beach were around half a mile apart, and were rendered visually and functionally discrete by the island's geography. The workers used vehicles to travel from the pier to each day's worksite. So both interconnectedness and proximity are lacking. Moreover, to whatever extent we might conceive of the beach and the dock as a single locus, that broad area was not dedicated to longshore work. *Id.* Instead, the overarching objective of the enterprise was the restoration of the island. The workmen would clean a different beachfront area each day. Any tangential relationship between the recovery effort and the transport vessel is insufficient to convert the entire island (or its discrete parts) into a single longshore facility of some kind. *See Depot,* 718 F.3d at 396 (Clement, J., concurring) (explaining that endeavors tangentially related to traditional longshore work are not themselves longshore in nature). The beach, therefore, was not part of a larger contiguous area customarily used for longshore activity. *Ala. Dry Dock,* 554 F.2d at 178.

For the stated reasons, we hold that De La Cruz's injury was not sustained at a situs reached by the LHWCA. Per the parties' common interpretation of the policy language, the injury is therefore not subject to the exclusion in dispute. Accordingly, summary judgment is REVERSED. The case is REMANDED for further proceedings not inconsistent with this decision.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.