# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 14, 2014

Lyle W. Cayce
Clerk

No. 12-40854

DORIS FORTE, O.D., on behalf of herself and all other similarly situated persons; SYLVIA BROWN, O.D.; SHERRI FAUVER RAST, O.D., on behalf of themselves and all other similarly situated persons; MARCUS HOOD, O.D., on behalf of themselves and all other similarly situated persons; BRIDGET LEESANG, O.D.; DAVID WIGGINS, O.D.; GHASSEN ATASHI RANG, O.D.; JOHN RIVERA, O.D.; BERNARD MASLOVITZ, O.D.; DOAN-AHN PHAM, O.D.; RON MIXON, O.D.; JOHN BOLDAN, O.D.,

> Plaintiffs - Appellees

v.

WAL-MART STORES, INCORPORATED,

> Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and JOLLY, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case of first impression calls upon us to interpret and apply the Texas Optometry Act. Wal-Mart rented space to optometrists using a standard lease agreement requiring optometrists to make representations in their leases of the projected number of hours their offices would remain open. A jury found Wal-Mart liable for "setting or attempting to influence . . . office hours of an optometrist" in violation of the Act. The jury returned a civil penalty award, which the district judge called "stunning" and "the highest verdict that's been

No. 12-40854

reached in this court . . . in a case that is not worthy of the highest verdict." Accordingly, the district judge remitted the award, and the plaintiffs accepted the remittitur. On Wal-Mart's appeal, we AFFIRM the judgment of liability. In doing so, we decline to adopt Wal-Mart's construction of the Texas Optometry Act, which runs counter to its plain words giving it its plain meaning. We further hold, however, that Texas's rule on exemplary damages requires us to REVERSE and VACATE the civil penalty awards inasmuch as the plaintiffs neither suffered nor were awarded any underlying damages. We REMAND the case to the district court for entry of judgment consistent with this opinion.

I.

A.

Since 1992, Wal-Mart Stores, Inc. ("Wal-Mart") has leased space in its Texas stores to optometrists, typically receiving as rent ten percent of the optometrists' gross income. Through 1995, the standard lease Wal-Mart used in Texas required optometrists to remain open for at least forty-five hours a week. Failure to abide by the terms of the lease put the optometrist in default, which, at Wal-Mart's discretion, could trigger a liquidated damages provision of $200 per day of violation. Although none of the four plaintiffs here leased space at Wal-Mart when the forty-five hour requirement was in effect, that requirement set the stage for the events that followed.

In 1995, the Texas Optometry Board ("the Board"), a state agency regulating optometry, notified Wal-Mart that setting required hours violated the Texas Optometry Act ("TOA"), which prohibits "control[ling] . . . the practice of an optometrist" by "attempting to influence the . . . office hours of an optometrist." TEX. OCC. CODE § 351.408(b), (c). Wal-Mart then eliminated the forty-five hour requirement and revised its lease to read "[t]he following is the LICENSEE'S representation of the weekly hours of coverage

2

No. 12-40854

to the patients," which was followed by a table in which the optometrists could handwrite their hours. The lease further provided that Wal-Mart "shall retain no control whatsoever over the manner and means by which the LICENSEE performs his/her work."

In 1998, after Wal-Mart revised its lease, the Board stated in a newsletter addressed to the public at large that leases that even referenced hours violated the TOA. In 2003, the Board wrote Wal-Mart that it had learned that Wal-Mart had told an optometrist that customers were requesting longer hours. The Board warned that, although it was aware that Wal-Mart had also stated "the ultimate decision regarding the hours and fees for eye examinations are made by the doctors," even informing optometrists of customer requests for longer hours violated the TOA. Nonetheless, Wal-Mart continued requiring that optometrists provide the hours representations in its leases.

### B.

In 2007, the dispute culminated in this suit when Doris Forte sued Wal-Mart in the United States District Court for the Southern District of Texas for alleged violations of the TOA. Eleven plaintiffs moved to certify a class action of four hundred optometrists. The district court, however, denied the certification and instead designated four plaintiffs that would go to trial. These plaintiffs were Drs. Doris Forte, John Boldan, David Wiggins, and Bridget LeeSang.

In 2009, while the suit was pending, Wal-Mart deleted the hours representation provision from its leases and sent a letter to Texas lessees stating that it would not enforce this provision.

The four plaintiffs' claims were tried to a jury in August 2010. The judge instructed the jury that the plaintiffs "do not claim they have suffered any physical or economic damages [and] only seek to recover civil penalties." Wal-

No. 12-40854

Mart's primary argument in the district court was that the hours representation provision was not enforced, and that optometrists could change their hours if they desired. Wal-Mart also argued that the provision was not a condition of the lease because it was unenforceable.

The four plaintiff optometrists testified that they believed that the hours representation provision was binding and enforceable. All four plaintiffs conceded, however, that the hours were set at an acceptable level. Three of the plaintiffs renewed their leases, some multiple times, but when renewing all felt pressured to increase office and work hours.

The jury sided with the plaintiffs, awarding them $3,953,000 in civil penalties. This award was the maximum possible under the TOA—$1,000 per day that each plaintiff operated under his or her lease. The plaintiffs were also awarded $763,854 in attorneys' fees. As a point of reference, the evidence showed that the gross annual income of the optometrists was in the neighborhood of $200,000.

Post-verdict, Wal-Mart renewed its motion for a judgment as a matter of law (JMOL). The district court denied the motion with respect to liability but entered a remittitur reducing the civil penalty to $400 a day. *Forte v. Wal-Mart Stores, Inc.*, No. CC-07-155, 2011 WL 1740182, *17 (S.D. Tex. May 4, 2011). The reduced award totaled $1,396,400, to which the plaintiffs consented.

Wal-Mart now appeals the denial of its JMOL motion, asserting that the judgment should be reversed or vacated. Alternatively, Wal-Mart seeks further remittitur, and also urges that the civil penalty award as remitted by the district court violates both Texas's cap on exemplary damages and Due Process.

4

No. 12-40854

II.

We begin by addressing whether the district court erred in denying Wal-Mart's renewed JMOL motion, which we review de novo. *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 364 (5th Cir. 2012). "When reviewing jury verdicts, the court views all the evidence and draws all reasonable inferences in the light most favorable to the verdict." *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 258 (5th Cir. 2011). A JMOL motion will be granted "[i]f the facts and inferences point so strongly in favor of [Wal-Mart] that a rational jury could not arrive at a contrary verdict." *Id.* (internal quotation marks omitted).

A.

As a threshold matter, we reject the plaintiffs' argument that Wal-Mart's new argument raised on appeal concerning the proper construction of the TOA was waived by failing to present it to the district court. In the district court, Wal-Mart contended that because it did not attempt to influence the plaintiffs' hours, it was not liable under the TOA. On appeal, Wal-Mart argues that although the TOA prohibits influencing office hours, it does so *only when* attempting to control an optometrist's professional judgment, and that the plaintiffs' claims are not covered under the TOA so interpreted.

It is certainly true that we do not generally consider matters on appeal that were not presented in the lower court. *New Orleans Depot Servs., Inc. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 387 (5th Cir. 2013) (en banc). The purpose of this rule is to ensure the appellate court benefits from a full record on the issue and a lower court determination. *Id.* at 388. Consequently, "a well-settled discretionary exception to the waiver rule exists where a disputed issue concerns a pure question of law." *Id.* (internal quotation marks omitted). Because Wal-Mart's argument on appeal concerns a pure question of law, and all parties have had an opportunity to fully brief

5

No. 12-40854

the question, the waiver rule does not bar our consideration of Wal-Mart's statutory argument as now presented to us.

B.

The TOA provision at issue, TEX. OCC. CODE § 351.408(c), states that

A . . . retailer of ophthalmic goods may not directly or indirectly:
(1)    control or attempt to control the professional judgment, manner of practice, or practice of an optometrist or therapeutic optometrist[.]

In turn, TEX. OCC. CODE § 351.408(b) states that

"[C]ontrol or attempt to control the professional judgment, manner of practice, or practice of an optometrist or therapeutic optometrist" includes:
(1)    setting or attempting to influence the . . . office hours of an optometrist or therapeutic optometrist[.]

Any person injured by a violation of § 351.408 may sue and recover an appropriate civil penalty. *Id.* at §§ 351.603(b), 351.605.

Wal-Mart invokes the absurdity canon to argue that we must deviate from the plain language of the TOA. To Wal-Mart, the TOA's prohibition against "control[ing] or attempt[ing] to control the professional judgment, manner of practice, or practice of an optometrist" would produce absurd results unless we erect some limiting principle. *Cf. Combs v. Health Care Servs., Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (departing from plain language warranted when plain language produces absurd results).

An example Wal-Mart proffered at oral argument is a retailer ordering an optometrist to keep his store clean. It would be absurd for the TOA to outlaw such an order, which could possibly be construed as an "attempt to control" an optometrist. Wal-Mart argues that an "attempt to control" must be linked to an attempt to control the optometrist's professional (i.e., medical) judgment. Wal-Mart argues that if the language of the TOA is applied literally, the TOA would prevent its ordering an optometrist to keep his store clean, but

6

No. 12-40854

because the cleanliness of the store is unrelated to the optometrist's professional judgment, the TOA avoids such absurdities.

By contrast, the plaintiffs argue that there is no getting away from the TOA's statement that, "control or attempt to control" includes "setting or attempting to influence . . . . office hours." TEX. OCC. CODE at § 351.408(b). Moreover, the plaintiffs also argue that the TOA expressly prohibits attempting to control "the professional judgment, *manner of practice, or practice of an optometrist.*" *Id.* at § 351.408(c) (emphasis added). Tying attempts to control only to professional judgment would read two of the three parts out of this provision. Moreover, the plaintiffs note that the TOA requires that § 351.408 be "liberally construed" to prevent retailers from imposing on optometrists' independence. *See id.* at § 351.408(a).

## C.

After considering the respective arguments of the parties, we adopt the plaintiffs' plain meaning interpretation for three reasons. First, Texas courts highlight the primacy of a statute's plain meaning. "When we interpret a Texas statute, we follow the same rules of construction that a Texas court would apply—and under Texas law the starting point of our analysis is the plain language of the statute." *Wright v. Ford Motor Co.,* 508 F.3d 263, 269 (5th Cir. 2007). The Texas Supreme Court has stressed that "stray[ing] from the plain language of a statute . . . risk[s] encroaching on the Legislature's function to decide what the law should be." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999).

Second, there is no absurd result in finding Wal-Mart liable here. The "bar for reworking the words our Legislature passed into law is high." *Combs*, 401 S.W.3d at 630. Consequently, the Texas Supreme Court views the absurdity canon as a "safety valve" that is "reserved for truly exceptional cases." *Id.* Here, when Wal-Mart began leasing space to optometrists, it was

7

on notice that the TOA affected the balance of power between retailers and optometrists.   More to the point, Wal-Mart was on notice that the TOA prohibited setting or attempting to influence office hours.  But Wal-Mart, a sophisticated party, contracted with optometrists nonetheless.  Given that it was on notice of the TOA when it began contracting with optometrists, Wal-Mart's liability was not "patently nonsensical." *Id.*

Wal-Mart's question about whether, consistent with the absurdity canon, a retailer can order an optometrist to keep his store clean is outside the bounds of what we need to decide to resolve this case.  There is already a clear line between influencing office hours and influencing office cleanliness.  *Only influencing office hours is explicitly listed in the TOA as a method of attempting to control an optometrist, and so is expressly prohibited.*  Coming up with an overarching interpretation of what an "attempt to control" encompasses is not necessary.

Third, when a court invokes the absurdity canon, it is attempting to divine a legislative intent that the plain meaning of the statute does not reflect. When a legislature uses an "amorphous term" we may sometimes have "no choice but to speculate about [legislative] intent." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004).  But such speculation is less necessary when the legislature "has textually narrowed the scope of [a] term." *Id.*  The Texas Legislature has narrowed "control or attempt to control" to specifically include "setting or attempting to influence . . . office hours."  "Control or attempt to control" is thus a narrowly defined rather than amorphous term. Consequently, we decline to speculate about legislative intent by invoking the absurdity canon.

Wal-Mart is asking us to winnow from a state statute its plain meaning. Because of federalism concerns, invoking the absurdity canon here is especially dangerous because it would involve a federal court's "encroaching on the

[Texas] Legislature's function to decide what the law should be." *Fitzgerald*, 996 S.W.2d at 866.

## D.

With that said, we turn to the plain meaning of the TOA. The TOA expressly prohibits a retailer's "attempt to control the . . . manner of practice" of an optometrist. TEX. OCC. CODE § 351.408(c). "Control or attempt to control" is minutely defined in Section 351.408, and includes "setting or attempting to influence the . . . office hours of an optometrist." *Id.* at § 351.408(b).

Under the plain language of the TOA, a rational jury could have found that Wal-Mart's leases and conduct constituted "an attempt to control the . . . manner of practice" of an optometrist by coercing him into working certain hours. *Id.* at § 351.408(c). The jury's verdict was supported by the optometrists' testimony that they understood themselves to be obligated to work the hours in the lease and that Wal-Mart pressured three plaintiffs to increase their hours when they renewed their leases.

## III.

We now move on to the district court's ruling that Chapter 41 of the Texas Civil Practices and Remedies Code ("TCPR") did not apply to reduce any of the plaintiffs' civil penalty awards. We review the district court's ruling de novo, as it is a question of law. *Williams v. Liberty Mut. Ins. Co.*, 741 F.3d 617, 620 (5th Cir. 2014). We hold that Chapter 41 eliminates the civil penalties in this case.

Under Chapter 41, "exemplary damages may be awarded *only if* damages other than nominal damages are awarded." TEX. CIV. PRAC. & REM. CODE § 41.004(a) (emphasis added). "Exemplary damages" are defined as "any damages awarded *as a penalty* or by way of punishment but not for

compensatory purposes." *Id.* at § 41.001(5) (emphasis added).[1] The TOA's civil penalties fall within Chapter 41's definition of "exemplary damages." First, the TOA expressly labels civil penalties as a type of penalty. TEX. OCC. CODE § 351.603(b). Second, the TOA's civil penalties as awarded here are not compensatory in nature. For example, the plaintiffs expressly disclaimed that they had suffered any actual damages.

The plaintiffs argue that *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358 (5th Cir. 2012), shows that Chapter 41's "exemplary damages" does not extend to the TOA's civil penalties. *Vanderbilt* held that "statutory damages" under TCPR Chapter 12, which prevents filing false liens, were *not* "exemplary damages" under Chapter 41 of the TCPR. 692 F.3d at 372. This was so despite statutory damages' not being designed to compensate for "any particular, actual harm." *Id.* The TOA's civil penalties, the plaintiffs argue, is similar to *Vanderbilt*'s "statutory damages" in that neither are intended to compensate for "actual harm." *Id.*

But *Vanderbilt* is distinguishable here for two reasons. First, in TCPR Chapter 12, "statutory damages" were listed separately from "exemplary damages." *Vanderbilt* stated that this indicated a legislative intent to treat statutory damages and exemplary damages as mutually exclusive. *Id.* As statutory damages were not exemplary damages under TCPR Chapter 12, neither were statutory damages exemplary damages under TCPR Chapter 41.

---

[1] Penalties and damages are not mutually exclusive under Chapter 41. "Exemplary damages" by definition includes "any *damages* awarded as a *penalty*." TEX. CIV. PRAC. & REM. CODE § 41.001(5) (emphasis added).

"Exemplary damages" are further defined to include punitive damages. *Id.* "Exemplary damages" are not, however, intended to compensate for: actual economic or pecuniary loss, physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life or injury to reputation. *Id.* at § 41.001(4), (5), (12).

But unlike TCPR Chapter 12, the TOA contains no indication that civil penalties and exemplary damages are mutually exclusive.

Second, the statutory damages in *Vanderbilt* were not characterized by the statute at issue as a "penalty," which constitutes a central element of the definition for exemplary damages under Chapter 41. TEX. CIV. PRAC. & REM. CODE § 41.001(5). By contrast, the TOA characterizes the award the plaintiffs seek here as a "civil penalty." TEX. OCC. CODE § 351.603(b). The argument that the TOA's civil penalties are "exemplary damages" is therefore significantly more compelling than the statutory damages that *Vanderbilt* considered.

We now circle back to Chapter 41's command that "exemplary damages may be awarded only if damages other than nominal damages are awarded." TEX. CIV. PRAC. & REM. CODE at § 41.004(a). Because civil penalties under the TOA constitute "exemplary damages" under Chapter 41, and because the plaintiffs have acknowledged that non-nominal damages were not awarded, Chapter 41 eliminates the award of civil penalties unless some exception to Chapter 41 applies.

The district court held that Chapter 41's lower damage cap exception applied. *Forte*, 2010 WL 519042 at \*2. This exception renders Chapter 41 inapplicable "to the extent another law establishes a lower maximum amount of damages for a particular claim." TEX. CIV. PRAC. & REM. CODE at § 41.002(b). Restated, Chapter 41 "applies to any action involving exemplary or punitive damages unless another law establishes a lower cap." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 611 (5th Cir. 2007). The "maximum exemplary award cannot be determined until the jury has awarded

economic damages." *Id.* at 612.[2] "Once the statutory cap *of Chapter 41* has been determined, a district court can then determine if *another . . .* statutory cap is lower and therefore controlling." *Id.* (emphasis added).

We hold that the district court erred in applying Chapter 41's lower damage cap exception. Chapter 41's section 41.004 caps damages for each plaintiff's claim at zero, because no plaintiff received non-nominal damages that would have in turn permitted *any* award of exemplary damages. TEX. CIV. PRAC. & REM. CODE § 41.004(a). By contrast, the TOA caps civil penalties at "$1,000 for each day of a violation." TEX. OCC. CODE § 351.603(b). Because the TOA does not establish a lower damage cap than Chapter 41, Chapter 41's lower damage cap exception does not apply.

The district court mistakenly determined that § 41.008(b) established the maximum amount of damages under Chapter 41. *Forte*, 2010 WL 519042 at *2. Section 41.008(b) caps exemplary damages at the greater of (a) "two times the amount of economic damages [plus] noneconomic damages . . . not to exceed $750,000" or (b) $200,000. TEX. CIV. PRAC. & REM. CODE at § 41.008(b). Since the plaintiffs asserted no economic or noneconomic damages within the meaning of Chapter 41, § 41.008(b) would cap the exemplary damages each plaintiff could have received at $200,000. But here, § 41.004(a) establishes the maximum amount of damages under Chapter 41 because it establishes a cap lower than § 41.008(b). Because the plaintiffs had no non-nominal damages, the maximum amount of exemplary damages under Chapter 41 for each plaintiff's particular claim was not $200,000 under § 41.008(b), but $0 under § 41.002(b).[3]

---

[2] Chapter 41 defines economic damages as "compensatory damages intended to compensate a claimant for actual economic or pecuniary loss." *Id.* at § 41.001(4).

[3] The district court also held that Chapter 41 did not apply because, in its reading of the TOA, the TOA does not require compensatory damages to be a prerequisite to civil

No. 12-40854

Because Chapter 41 eliminates the plaintiffs' civil penalty awards, we do not consider Wal-Mart's remittitur and Due Process arguments.

IV.

For the reasons above, we AFFIRM the district court's judgment regarding Wal-Mart's liability and REVERSE and VACATE the district court's judgment regarding damages. The case is REMANDED to the district court for entry of judgment consistent with this opinion.[4]

---

penalties. *Forte v. Wal-Mart Stores, Inc.,* No. CC-07-155, 2010 WL 519042, *2 (S.D. Tex., Feb. 2, 2010). The district court held that the TOA prevailed over Chapter 41 because the TOA was the more specific statute. *Id.* The district court erred, however, and the plaintiffs do not even cite this holding of the district court's in their brief, much less make such an argument.

Chapter 41 prevails over the TOA because Chapter 41 expressly states that it "prevail[s] over all other laws to the extent of any conflict." TEX. CIV. PRAC. & REM. CODE § 41.002(c). Moreover, the TOA is silent on what damage cap to apply when there are no compensatory damages. Consequently, on this specific issue there is no conflict between the TOA and Chapter 41. Invoking the specific versus the general canon is therefore not appropriate here.

[4] We do not address attorneys' fees in this opinion. We remand to the district court to consider attorneys' fees in the light of this opinion.