IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 17-30615
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

January 19, 2018

Lyle W. Cayce
Clerk

BAYWATER DRILLING, L.L.C.,

      Plaintiff - Appellant

v.

SOUTHWEST ENERGY PARTNERS, L.L.C.,

      Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-7968

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:[*]

Southwest Energy Partners, L.L.C. hired Baywater Drilling, L.L.C. to preform drilling services on an oil well. Less than a month after drilling began, Southwest decided to terminate drilling operations. Baywater filed suit arguing that in addition to the amounts it had already received from Southwest, it was owed a $300,000 early termination payment. Because

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30615

Southwest's prior payments to Baywater Drilling are all that the contract required, we AFFIRM.

## I.

Southwest owns and operates a well in the North Sabine Lake oilfield in Cameron Parish, Louisiana. It contracted with Baywater for drilling services. Twenty-four days after Baywater began work on the well, Southwest decided to terminate drilling operations because the well "took a kick." "Taking a kick" means high pressure in the well caused it to begin flowing too early. A kick is a natural phenomenon that can happen during drilling operations and it was neither caused by Baywater nor predictable in advance by the engineers.

The contract has an early termination provision that describes the amount due if either party stops operations early. Before it terminated, Southwest had paid Baywater $490,500. This amount consists of a $400,000 payment for twenty days' worth of work at the contractually agreed upon rate of $20,000 per day, $20,000 for the cost of a tug boat to move Baywater's rig from the well, and $70,500 for miscellaneous expenses. The $400,000 was paid before Baywater began drilling as Section 5.1 of the contract requires the operator to prepay for twenty days of work before the rig mobilizes.

Southwest stopped work as was its right under section 6.3(b) of the contract.[1]  Section 6.4 addresses compensation in the event of this early termination, with subsection 6.4(c) discussing the money owed in this situation when termination occurred after the start of drilling. It provides that the operator is required to pay the contractor "the amount for all applicable daywork rates and all other charges and reimbursements due to Contractor;

---

[1] Section 6.3(b) reads: "By Operator: Notwithstanding the provisions of Paragraph 3 with respect to the depth to be drilled, Operator shall have the right to direct the stoppage of the work to be performed by Contractor hereunder at any time prior to reaching the specified depth, and even though Contractor has made no default hereunder. In such event Operator shall reimburse contractor as set forth in sub-paragraph 6.4 hereof."

No. 17-30615

but in no event shall such sum, exclusive of reimbursements due, be less than would have been earned for 15 days at the applicable day rate. . . ."  The standard form contract the parties used[2] presents an alternative calculation in which the operator pays all reasonable and necessary expenses plus a lump sum.  In this contract, however, that lump sum is listed as "N/A," so the alternative remedy does not differ from the first measure.

## II.

We review a grant of summary judgment de novo.  *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 427 (5th Cir. 2003).  The interpretation of an unambiguous maritime contract is a question of law.  *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 554 (5th Cit. 2004).

Baywater contends that the district court misinterpreted the contract when it found that Southwest's prior payments satisfied its obligation under the termination clause.  It argues that the ""but in no event" clause of section 6.4(c) gives it the right to an additional 15 days of payments, which would result in $300,000 at the $20,000/day rate.  But the district court correctly concluded that Section 6.4(c) is not a liquidated damages clause, but instead a minimum payment requirement in the event the contract is terminated before the fifteenth day of performance.  Baywater worked for more than 15 days and was paid "all applicable daywork rates and all other charges and reimbursements" due for that work. Because the payments and reimbursements exceeded the minimum, Southwest's obligation to Baywater is complete.

---

[2] The contract comes from the International Association of Drilling Contractors.  *See Miller Expl. Co. v. Energy Drilling Co.,* 130 F. Supp. 2d 781, 785 (W.D. La. 2001), *aff'd*, 31 F. App'x 835 (5th Cir. 2002) (involving nearly identical contract).

## No. 17-30615

Baywater argues that the district court's interpretation renders Section 5.1 of the contract meaningless. It does not. Section 5.1 concerns the timing of payments and requires the operator to pay upfront for the first twenty days of work.[3] It then provides for a refund of any excess prepayment if the work were completed in fewer than twenty days. So if the drilling only lasted 17 days, the contractor would have to repay the operator for three days of prepaid expenses. This prepayment provision does not transform 6.4(c) into a liquidated damages provision, particularly when another provision of the contract (section 6.4(a)) expressly calls for liquidated damages only if the contract is terminated prior to the commencement of operations.

Drilling had begun in this case and, prior to termination, Baywater had received close to a half-million dollars from Southwest. Southwest did not breach the contract, it merely exercised its right to terminate. Baywater's request for another $300,000 is based on an erroneous reading of the contract. Southwest paid what it owed. Baywater has no right to additional money.

### III.

Aside from its contractual argument, Baywater argues that Southwest made an admission during discovery that precluded it from later arguing that it had made sufficient payments. Although it does not invoke the doctrine by name, Baywater appears to be arguing judicial estoppel. It points to Request for Admission No. 15 which states "Please admit or deny that Southwest has made no payment to Baywater for early termination of the contract." Southwest responded "It is admitted that payment has not been made. However, Southwest contends that Baywater's right to payment is subject to

---

[3] Section 5.1 states "Payment for mobilization, drilling and other work performed at applicable day rates, and all other applicable charges shall be due for the first 20 days of work, prior to mobilization of the rig. If the Contractor estimates the work to go beyond 20 days, the Operator agrees to prepay a mutually agreed to number of days based on the estimated completion date of the work beyond the first 20 days of work."

No. 17-30615

Southwest's available defenses. For example, Southwest contends that the CAILLOU could not drill to a deeper depth due to its condition."

Baywater mischaracterizes the response. Southwest is denying payment of the additional $300,000 early termination payment that Baywater sought in filing this lawsuit; it is not denying its earlier payments which would have been sitting in Baywater's bank accounts and thus not the subject of any dispute. On the same page of the record, when asked to provide a detailed explanation of facts that support Southwest's affirmative defenses, Southwest answered, "Defendants contends [sic] that it paid plaintiff for services rendered in the amount of $460,000 followed by a payment of $70,500 on March 28, 2016." This argument mirrors what Southwest has consistently argued in its motion for summary judgment and on appeal: that it did not owe Baywater the claimed $300,000 "early termination fee" because sufficient compensation had already been paid. Baywater's argument is disingenuous as it had to know that it had received substantial payments from Southwest prior to termination.[4]

**\* \* \***

The judgment is affirmed.

---

[4] Baywater's claim that it is entitled to discovery sanctions under Federal Rule of Civil Procedure 37(c) for the deposition it had to take to "disprove" Admission No. 15 fails for the same reason, even if requesting sanctions in a footnote in summary judgment briefing constitutes a sufficient motion for sanctions. Baywater also requests costs from a second deposition related to alleged misrepresentations about the substandard condition of its equipment. This request was not made in any format in the district court, so cannot be considered on appeal. Our general rule against hearing new issues on appeal, *New Orleans Depot Servs., Inc. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 387 (5th Cir. 2013) (en banc) ("Generally, we do not consider issues on appeal that were not presented and argued before the lower court."), has even more force when it comes to a request for discovery sanctions given the discretion district courts enjoy in that area.