Opinion issued August 2, 2012



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-11-00605-CV

————————————————

**TEXAS APPLESEED, Appellant**

**V.**

**SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2009-73061**

---

## O P I N I O N

Appellant, Texas Appleseed, brought a suit for writ of mandamus and suit for declaratory judgment against appellee, Spring Branch Independent School District ("Spring Branch ISD"), seeking disclosure of certain information under the

Texas Open Records Act.[1]  Both parties brought summary judgment motions.  The trial court granted Spring Branch ISD's motion and denied Texas Appleseed's motion.  Texas Appleseed appealed.  In three issues, Texas Appleseed argues the trial court erred by granting Spring Branch ISD's motion for summary judgment because (1) there was insufficient evidence to establish disclosure of the redacted information would interfere with law enforcement, (2) the substance of the information is already available to the public, and (3) provisions in other laws contain substantially identical policies.

We affirm.

## Background

Texas Appleseed is a public interest law center that has a focus on school discipline and juvenile justice issues.  As a part of this focus, Texas Appleseed sent open records requests to a number of school districts throughout Texas, including Spring Branch ISD.  The open records request sent to Spring Branch ISD sought, among other things, "[t]he operations manual, general orders manual, or handbook for Spring Branch ISD police officers."  From the content of the open records request, it is clear that Texas Appleseed was seeking, among other things, Spring Branch ISD's use of force policies.

---

[1] *See* TEX. GOV'T CODE ANN. §§ 552.001–.353 (Vernon 2004 & Supp. 2011).

Spring Branch ISD sent a timely request for an opinion from the Texas Attorney General. Spring Branch ISD asserted that portions of their police department handbook were exempt from disclosure. The Attorney General determined that certain portions of the handbook were exempt from disclosure, while other portions were not. Ultimately, Spring Branch ISD produced to Texas Appleseed a copy of the police department's handbook with redactions for the portions of the handbook that the Attorney General agreed were excepted from disclosure.

Texas Appleseed then brought the current suit. Both parties ultimately filed competing motions for summary judgment on whether certain portions of the handbook were exempt from disclosure. The trial court found in favor of Spring Branch ISD and against Texas Appleseed. Texas Appleseed appealed.

**Standard of Review**

The summary-judgment movant must conclusively establish its right to judgment as a matter of law. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

To prevail on a traditional summary-judgment motion, asserted under Rule 166a(c), a movant must prove that there is no genuine issue regarding any material

3

fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When a party moves for summary judgment on a claim for which it bears the burden of proof, it must show that it is entitled to prevail on each element of its cause of action. *See Parker v. Dodge*, 98 S.W.3d 297, 299 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The party meets this burden if it produces evidence that would be sufficient to support an instructed verdict at trial. *Id.*

When a party moves for summary judgment on a claim for which it does not bear the burden of proof, it must establish as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the nonmovant's claim. *Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970).

To determine if there is a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827). We

4

indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

When, as here, the parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, we review the summary judgment evidence supporting both motions and "render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## Applicable Law

Under the Texas Public Information Act ("TPIA"), a governmental body is required to make public information available to the public. TEX. GOV'T CODE ANN. § 552.021 (Vernon 2004). Public information includes information that is maintained in connection with the transaction of official business of the governmental body. *Id.* § 552.002 (Vernon 2004).

It is undisputed by the parties that the redacted portions of the handbook meet the definition of "public information" under the TPIA. Spring Branch ISD asserts, instead, that the information does not have to be disclosed pursuant to section 552.108 of the act. *See id.* § 552.108(b)(1) (Vernon Supp. 2005). Section 552.108, in pertinent part, excepts from disclosure "[a]n internal record or notation of a law enforcement agency . . . that is maintained for internal use in matters relating to law enforcement . . . if . . . release of the internal record or notation

5

would interfere with law enforcement." *Id.* We must determine, then, whether the redacted information falls under this exception. The parties do not wholly agree, however, on what law is applicable to our analysis.

We begin by recognizing that the act specifically states that "it is the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all time to complete information about the affairs of government and the official acts of public officials and employees." *Id.* § 552.001(a) (Vernon 2004). To that end, the act must be liberally construed in favor of granting a request for information and the exceptions must be narrowly construed. *See id.* § 552.001(b) (requiring act to be liberally construed in favor of granting request for information); *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 329 (Tex. App.—Austin 2002, no pet.) (holding Texas courts have consistently narrowly construed type of information that may be withheld under act's exceptions).

Section 552.108 "specifically excepts from disclosure information which would reveal law enforcement techniques to the public, unduly interfere with law enforcement, and make it more difficult for an agency to do its job." *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 678 (Tex. 1995). The purpose of the statute is to prevent disclosure of information that, "if released, would permit private citizens to anticipate weaknesses in a police department, avoid detection,

6

jeopardize officer safety, and generally undermine police efforts to effectuate the laws of this State." *Cornyn*, 86 S.W.3d at 327.

## A. Application of the Texas Education Code

Texas Appleseed argues that we must harmonize section 552.108 with the Texas Education Code. It argues that certain provisions under the Texas Education Code mandate openness of the information it seeks. Specifically, Texas Appleseed relies on sections 4.001, 26.001, 26.004, and 26.008. *See* TEX. EDUC. CODE ANN. §§ 4.001, 26.001, 26.004, 26.008 (Vernon 2006).

Section 4.001 provides, in part, that "parental involvement in the school is essential for the maximum educational achievement of a child." *Id.* § 4.001(a). Section 26.001 provides that "[p]arents are partners with educators, administrators, and school district boards of trustees in their children's education." *Id.* § 26.001(a). It is a common statutory interpretation rule that specific provisions control over general provisions. TEX. GOV'T CODE ANN. § 311.026 (Vernon 2005). Accordingly, assuming without deciding that there is overlap between these statutes and section 552.108 of the Government Code that requires harmonizing, the specific provision of what may be excepted from public disclosure controls over aspirational goals of having parents involved with schools in their children's education.

Section 26.004 provides a "parent is entitled to access to all written records of a school district concerning the parent's child." TEX. EDUC. CODE ANN. § 26.004. This includes access to the child's disciplinary records. *Id.* § 26.004(4). A school district's police force's handbook does not fall under the general category of written records regarding the parent's child. Nor does it fall under any of the more specific categories, including a child's disciplinary records. Similarly, section 26.008's provision that a "parent is entitled to full information regarding the school activities of a parent's child" does not concern the disclosure of a school district's police force's handbook. *See id.* § 26.008(a).

Texas Appleseed also argues that "[t]he school environment creates special concerns related to use of force" and that, accordingly, this "require[s] full access to the policies that could adversely affect students' physical or mental health." Two amicus briefs filed in support of Texas Appleseed make similar arguments. Nothing in section 552.108 suggests, however, that different considerations apply to different police forces or that there is any sort of balancing test between the strength of the public's interest in the information and the degree that the release of the information would interfere with law enforcement. Instead, section 552.108 provides that the information is excepted from disclosure if "release of the internal record or notation would interfere with law enforcement." *Id.* § 552.108(b)(1). We are not authorized to add rules or balancing tests that are not already in the act.

8

*See Holmes v. Morales*, 924 S.W.2d 920, 925 (Tex. 1996) (holding "[i]t is the Legislature's responsibility to impose restrictions, if any, on the Open Records Act's unambiguous and unqualified language"). Accordingly, these additional considerations are not a part of our analysis.

**B.     Public Availability of Similar Policies**

In its second issue, Texas Appleseed argues the information could not be withheld because "the substance of those policies is widely available." In its third issue, Texas Appleseed argues the information could not be withheld because provisions in other law contain "substantially identical policies." As a part of these issues, Texas Appleseed argues (1) other school districts have disclosed their use of force policies; (2) Spring Branch ISD's use of force policies are substantially similar to some of the other school districts' use of force policies; (3) and Texas government administrators have "incorporate[d] substantially similar policies in the statutes establishing the Texas Youth Commission . . . and the Texas Juvenile Probation Commission." Based on these assertions, Texas Appleseed argues Spring Branch ISD cannot withhold its use of force policies even if those policies do fall under section 552.108.

We do not agree with Texas Appleseed that there is a blanket rule for the TPIA that all information that is available to the public in some form must also be disclosed in an open records request. The Texas Supreme Court has recognized

9

that if information is disclosed to one party in an open records request, it must be disclosed to all parties seeking that information. *Tex. Comptroller of Pub. Accounts v. Attorney Gen. of Tex.*, 354 S.W.3d 336, 343 (Tex. 2010); *see also* TEX. GOV'T CODE ANN. § 552.007(b) (Vernon 2004) (requiring voluntarily disclosed information to be made available to any person). It has also held, however, that the right to exclude information from disclosure "'does not dissolve simply because that information may be available to the public in some form.'" *Tex. Comptroller*, 354 S.W.3d at 343 (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 500, 114 S. Ct. 1006, 1015 (1994)).

We do not need to determine the exact contours of what public information must be disclosed. It is sufficient to state that the disclosure requirement is not as broad as Texas Appleseed asserts.

Texas Appleseed does not establish that Spring Branch ISD has produced its handbook in its entirety in any previous open records request. Nor does it establish that Spring Branch ISD's handbook has been publicly disclosed in any other way. Instead, Texas Appleseed argues that other school districts have disclosed their use of force policies and that policies from other governmental bodies that are substantially similar to or the same as Spring Branch ISD's policies have already been disclosed.

10

We reject the claim that the actions of one governmental body regarding disclosure of its information impacts what actions any other governmental body can take regarding disclosure of its information. The TPIA expressly recognizes that a governmental body is not prohibited "from voluntarily making part or all of its information available to the public, unless the disclosure is expressly prohibited by law or the information is confidential under law." TEX. GOV'T CODE ANN. § 552.007(a). But once that information is disclosed, it is only *that* specific information that must be made available to any person. *Id.* § 552.007(b). One governmental body is not compelled to produce its exempted information simply because another governmental body has voluntarily elected to disclose its exempted information.

Similarly, whether the same or similar policies have already been made public has no bearing on whether a governmental body has waived its rights to claim exemption from disclosure. Accordingly, the existence of the same or similar policies by other governmental bodies does not affect our analysis of whether Spring Branch ISD must disclose the redacted information in this case.

We overrule Texas Appleseed's second and third issues.

## C. Level of Specificity

Finally, Texas Appleseed argues that section 552.108 "may be used only to prevent disclosure of very specific information." It asserts that if the information

11

sought to be withheld is not sufficiently detailed, it cannot be withheld. Texas Appleseed argues that one case in particular is "instructive" on "the type of detail that will allow otherwise public materials to be withheld." *See Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112 (Tex. 2011). This case, however, neither deals with section 552.108 nor establishes any requisite specificity to withhold any information under the TPIA. Instead, it stands for the proposition that there is a common-law right in Texas to be free from physical harm and that this right can justify withholding information under a different section of the TPIA. *Id.* at 116. The court held that the governmental body must "show, with detailed evidence or expert testimony, that revelation [of the withheld information] substantially threatens harm." *Id.* at 119. While the court held that conclusory evidence would not suffice, it did not hold—as Texas Appleseed asserts—that there is any requisite level of detail in the information to be withheld.

The other authorities that Texas Appleseed relies on suffer a similar problem. *See Holmes*, 924 S.W.2d at 925; *Ex parte Pruitt*, 551 S.W.2d 706, 709–10 (Tex. 1977); Tex. Att'y Gen. OR1984-413. While each of these authorities may deal, to some degree or another, with specific information, none of the authorities actually assert that the specificity is what was required or that anything less would be insufficient. Showing that withholding of specific information has been upheld does not necessarily mean that specific information is required. Instead, our

12

concern is whether "release of the internal record or notation would interfere with law enforcement." TEX. GOV'T CODE ANN. § 552.108.

**Analysis**

Texas Appleseed specifically challenged the redaction in six sections of the handbook. The redacted sections concern (1) a contingency plan for a rapid response to a crisis; (2) the limits of a police officer's discretionary authority; (3) limitations on the use of force; (4) the policy on use of pepper spray; (5) the policy on use of canines; and (6) the procedure for handling mass gatherings and protests.

Before reviewing the evidence concerning the specific sections, it is important to point out that the only testimony upon which either party relied was the testimony of Chief Charles Brawner, the Chief of the Spring Branch ISD Police Department. The testimony comes from an affidavit and a deposition transcript. Chief Brawner has been a police officer for over 40 years and the chief of the Spring Branch Independent School District's police department since 1995. He is also the Chairman of the Governor's Juvenile Justice Advisory Board.

According to Chief Brawner, Spring Branch ISD is comprised of more than 50 campuses and approximately 32,300 students. Its police department functions as law enforcement and security for all of the campuses and facilities 24 hours a day. Its officers "have the powers, privileges and immunities of municipal peace

13

officers" and may enforce all laws—federal, state, and local—within their jurisdiction.

Chief Brawner further asserted,

The [police department]'s peace officers' duties include protecting the safety and welfare of any person it the [police department]'s jurisdiction, as well as the property of [Spring Branch ISD]. Because the [police department] serves all members of the public within its jurisdiction, its officers encounter the same criminal element as local law enforcement officers with overlapping jurisdiction. Additionally, many of the students within [Spring Branch ISD] are adults (more than 18 years of age), including students with felony records. There also exists a criminal element of the student population, frequently involved in gangs.

In other words, the police officers' duties are not limited to interacting with students, but also interacting with all members of the public in their area as well as protecting school property. In fact, as Chief Brawner explained, the police department's "officers are not involved in any way with the education or discipline of [Spring Branch ISD] students." The interactions the officers do have with students, however, can include interactions with adult felons and minors involved in gangs.

Texas Appleseed did not controvert any of this evidence. It also did not present any testimony from another witness to controvert Chief Brawner's testimony regarding how disclosure of the redacted sections would interfere with law enforcement.

14

## A. Rapid Response Contingency Plan

The first section concerns "a contingency plan for a rapid response to a crisis situation that may occur at a District campus or facility." The portion of this section that was redacted was the procedure section. In support of its motion for summary judgment, Spring Branch ISD included the affidavit of Chief Charles Brawner. Chief Brawner correctly asserted that the procedure section "details procedures for responding to a crisis or critical incident, including the protocol for command, how to report the incident, and which of the designated members of the Response Team are to be alerted to assist in handling of the crisis." He further asserts that release of this information would interfere with law enforcement because it "could allow a potential criminal to intercept communications and otherwise interfere with the response efforts of Response Team members when handling a crisis."

Texas Appleseed argues that Chief Brawner's assertion of potential harm is too conclusory to satisfy the requirements of section 552.108. We disagree. A review of the redacted portions of the contingency plan supports Chief Brawner's testimony "that revelation [of the withheld information] substantially threatens harm." *Cox Tex. Newspapers*, 343 S.W.3d at 119. We hold the State met its burden.

15

## B. Limits of an Officer's Discretionary Authority

The second section concerns the "boundaries within which authority may be responsibly used." Two small portions were redacted from this section. As summarized by Chief Brawner, these two portions address "when an officer should 'back off' from confrontations with citizens and forego arrest." He asserts that release of this information could "embolden citizens to escalate a confrontation with an officer just short of arrest."

He also asserts that some of the students are gang members. For certain gangs, initiation and promotion within the gang depend on confronting and being arrested by police officers. For those students, disclosure of this information could encourage escalating confrontations with officers.

Texas Appleseed argues that Chief Brawner's explanations were too conclusory. After reviewing the redacted information, we disagree. *See Cox Tex. Newspapers*, 343 S.W.3d at 119 (requiring showing that revelation of withheld information substantially threatens harm).

## C. Limitations on Use of Force

The third section concerns the limitations on an officer's authority to use force. Much of this section has been redacted. Chief Brawner explains that this section "provides the specific use of force continuum that will be followed dependent upon the amount of resistance being exerted against an officer." Chief

Branwer asserts that disclosure of the information would reveal "the type of conduct an officer will use to bring a potentially volatile situation under control" and "[d]isclosure of such information can remove an important deterrent to individuals who otherwise might escalate a violent confrontation."

Texas Appleseed argues that portions of the redacted information are too general to pose any harm to Spring Branch ISD if the information was made public. Texas Appleseed did not present any evidence, however, to support its assertion that the redacted information is too general to pose any harm. Instead, Texas Appleseed points to portions of Chief Brawner's deposition where, when asked to provide more specific explanations of how the redacted information would interfere with Spring Branch ISD's ability to detect, investigate, or prosecute crime, he declined to be more specific.

The Texas Attorney General has asserted that restatements of Penal Code provisions, common-law rules, and constitutional limitations on the use of force are not entitled to be withheld. Tex. Att'y Gen. OR1989-531.[2] While the Attorney General does not except from disclosure general administrative guidelines that contain some use of force information—other than the use of force information—it

---

[2] Although they are not binding, attorney general opinions are persuasive and entitled to due consideration. *Comm'rs Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 82 (Tex. 1997); *see also City of Hous. v. Hous. Chronicle Publ'g Co.*, 673 S.W.2d 316, 322 (Tex. App.—Houston [1st Dist.] 1984, no writ) (holding attorney general opinions should be given great weight).

17

continues to except from disclosure use of force policies. *Id.* We agree with this application of section 552.108.

Here, all of the redacted information deals directly with Spring Branch ISD's use of force policy. Portions dealing with Penal Code provisions, common-law rules, and constitutional limitations on the use of force have not been redacted. We decline to require disclosure of other portions of the redacted information based on the unsupported assertion that they are too general to pose any harm to Spring Branch ISD if publicly released.

**D. Pepper Spray**

The fourth section concerns the use of oleoresin capsicum spray, known more commonly as "pepper spray." Spring Branch redacted the portion explaining when pepper spray may be used. Chief Brawner argues release of this redacted information would inform potential criminals the points at which pepper spray might be used, allowing them to take preemptive measures before that point has been reached.

Texas Appleseed argues "it is at least [as] likely that wider knowledge of the broad policy on the use of pepper spray would deter misbehavior rather than facilitate it." Again, Texas Appleseed presented no evidence to support this assertion.

Furthermore, as we have already held, we are not engaged in a balancing test. Section 552.108(b)(1) allows withholding information if it "would interfere with law enforcement." TEX. GOV'T CODE ANN. § 552.108(b)(1). Whether release of the information could also have a deterrent effect on other people and whether the potential benefit is greater than the potential harm are not a part of our analysis. As long as release of the information "would interfere with law enforcement," it can be withheld. *Id.*

Texas Appleseed also sought to obtain a more detailed explanation of how release of the information would interfere with Spring Branch ISD's ability to detect, investigate, or prosecute crime from Chief Brawner during his deposition. Texas Appleseed argues that this establishes that the redacted portion is too general to warrant redaction. We disagree, applying the reasoning used in redaction of use of force policies. *See* Tex. Att'y Gen. OR1989-531 (excepting from disclosure use of force polices other than general administrative guidelines and restatements of Penal Code provisions, common-law rules, and constitutional limitations on the use of force). We decline to require disclosure of other portions of the redacted information based on the unsupported assertion that they are too general to pose any harm to Spring Branch ISD if publicly released.

19

### E.  Canines

This section concerns the use of dogs in police activity.  Two portions were redacted from this section: (1) information on when the dogs can be released from the lead and (2) when the "Canine Teams" should be used.  Chief Brawner asserts release of these portions "would inform potential criminals the tactics the [police department] uses in deploying canines, giving the criminal the upper hand in confrontations with officers."

Texas Appleseed argues that Chief Brawner's explanation was too conclusory.  After reviewing the redacted information, we disagree.  *See Cox Tex. Newspapers*, 343 S.W.3d at 119 (requiring showing that revelation of withheld information substantially threatens harm).

### F.  Mass Gatherings and Protests

This section concerns the protocol to be used during a mass gathering or protest.  The section gives three examples of mass gatherings and protests.  The response by police officers in two of the examples was redacted.  Chief Brawner asserts that release of this information "could enable protesters to thwart the attempts of officers in dispersing a mass gathering."

Despite the fact that Chief Brawner offered specific examples in his affidavit of how the information could be misused, Texas Appleseed argues that Chief

Brawner's explanation was too conclusory. After reviewing the redacted information, we disagree. *See id.*

We overrule Texas Appleseed's first issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.