# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 20, 2015

Lyle W. Cayce
Clerk

No. 12-40854

———

DORIS FORTE, O.D., on behalf of herself and all other similarly situated persons; BRIDGET LEESANG, O.D.; DAVID WIGGINS, O.D.; JOHN BOLDAN, O.D.,

      Plaintiffs - Appellees

v.

WAL-MART STORES, INCORPORATED,

      Defendant - Appellant

———

Appeal from the United States District Court
for the Southern District of Texas

———

Before STEWART, Chief Judge, and JOLLY, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The original opinion in this case was filed on August 14, 2014.[1]  In that opinion, we affirmed the district court's judgment of liability under the Texas Optometry Act ("TOA"), Tex. Occ. Code § 351.408(c).  We reversed and vacated the district court's monetary award, however.  We held that Chapter 41 of the Texas Civil Practices and Remedies Code ("Chapter 41") precludes the district court's award of the civil penalties in this case.  Tex. Civ. Prac. & Rem. Code §

---

[1] *Forte v. Wal-Mart Stores, Inc.*, 763 F.3d 421 (5th Cir. 2014).

No. 12-40854

41.004(a).  The plaintiffs filed a petition for rehearing en banc, challenging our decision to reverse and vacate the monetary award.  We treat the plaintiff's petition as a petition for panel rehearing, which is GRANTED.  The original opinion is VACATED.

We reinstate the holding in Part II of the original opinion, and accordingly AFFIRM the district court's judgment as to liability for the reasons stated in Part II of that opinion.  Part II of the original opinion reads as follows:

> II.
>
> We begin by addressing whether the district court erred in denying Wal-Mart's renewed JMOL motion, which we review de novo.  *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 692 F.3d 358, 364 (5th Cir. 2012).  "When reviewing jury verdicts, the court views all the evidence and draws all reasonable inferences in the light most favorable to the verdict."  *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 258 (5th Cir. 2011).  A JMOL motion will be granted "[i]f the facts and inferences point so strongly in favor of [Wal-Mart] that a rational jury could not arrive at a contrary verdict."  *Id.* (internal quotation marks omitted).
>
> A.
>
> As a threshold matter, we reject the plaintiffs' argument that Wal-Mart's new argument raised on appeal concerning the proper construction of the TOA was waived by failing to present it to the district court.  In the district court, Wal-Mart contended that because it did not attempt to influence the plaintiffs' hours, it was not liable under the TOA.  On appeal, Wal-Mart argues that although the TOA prohibits influencing office hours, it does so *only when* attempting to control an optometrist's professional judgment, and that the plaintiffs' claims are not covered under the TOA so interpreted.
>
> It is certainly true that we do not generally consider matters on appeal that were not presented in the lower court.  *New Orleans Depot Servs., Inc. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 387 (5th Cir. 2013) (en banc).  The purpose of this rule is to ensure the appellate court benefits from a full record on the issue and a lower court determination.  *Id.* at 388.  Consequently, "a well-settled discretionary exception to the waiver rule exists

2

No. 12-40854

where a disputed issue concerns a pure question of law." *Id.* (internal quotation marks omitted). Because Wal-Mart's argument on appeal concerns a pure question of law, and all parties have had an opportunity to fully brief the question, the waiver rule does not bar our consideration of Wal-Mart's statutory argument as now presented to us.

B.

The TOA provision at issue, TEX. OCC. CODE § 351.408(c), states that

A . . . retailer of ophthalmic goods may not directly or indirectly:

(1)    control or attempt to control the professional judgment, manner of practice, or practice of an optometrist or therapeutic optometrist[.]

In turn, TEX. OCC. CODE § 351.408(b) states that

"[C]ontrol or attempt to control the professional judgment, manner of practice, or practice of an optometrist or therapeutic optometrist" includes:

(1)    setting or attempting to influence the . . . office hours of an optometrist or therapeutic optometrist[.]

Any person injured by a violation of § 351.408 may sue and recover an appropriate civil penalty. *Id.* at §§ 351.603(b), 351.605.

Wal-Mart invokes the absurdity canon to argue that we must deviate from the plain language of the TOA. To Wal-Mart, the TOA's prohibition against "control[ing] or attempt[ing] to control the professional judgment, manner of practice, or practice of an optometrist" would produce absurd results unless we erect some limiting principle. *Cf. Combs v. Health Care Servs., Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (departing from plain language warranted when plain language produces absurd results).

An example Wal-Mart proffered at oral argument is a retailer ordering an optometrist to keep his store clean. It would be absurd for the TOA to outlaw such an order, which could possibly be construed as an "attempt to control" an optometrist. Wal-Mart argues that an "attempt to control" must be linked to an attempt to control the optometrist's professional (i.e., medical)

3

judgment. Wal-Mart argues that if the language of the TOA is applied literally, the TOA would prevent its ordering an optometrist to keep his store clean, but because the cleanliness of the store is unrelated to the optometrist's professional judgment, the TOA avoids such absurdities.

By contrast, the plaintiffs argue that there is no getting away from the TOA's statement that, "control or attempt to control" includes "setting or attempting to influence . . . . office hours." TEX. OCC. CODE at § 351.408(b). Moreover, the plaintiffs also argue that the TOA expressly prohibits attempting to control "the professional judgment, *manner of practice, or practice of an optometrist*." *Id.* at § 351.408(c) (emphasis added). Tying attempts to control only to professional judgment would read two of the three parts out of this provision. Moreover, the plaintiffs note that the TOA requires that § 351.408 be "liberally construed" to prevent retailers from imposing on optometrists' independence. *See id.* at § 351.408(a).

C.

After considering the respective arguments of the parties, we adopt the plaintiffs' plain meaning interpretation for three reasons. First, Texas courts highlight the primacy of a statute's plain meaning. "When we interpret a Texas statute, we follow the same rules of construction that a Texas court would apply—and under Texas law the starting point of our analysis is the plain language of the statute." *Wright v. Ford Motor Co.,* 508 F.3d 263, 269 (5th Cir. 2007). The Texas Supreme Court has stressed that "stray[ing] from the plain language of a statute . . . risk[s] encroaching on the Legislature's function to decide what the law should be." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999).

Second, there is no absurd result in finding Wal-Mart liable here. The "bar for reworking the words our Legislature passed into law is high." *Combs*, 401 S.W.3d at 630. Consequently, the Texas Supreme Court views the absurdity canon as a "safety valve" that is "reserved for truly exceptional cases." *Id.* Here, when Wal-Mart began leasing space to optometrists, it was on notice that the TOA affected the balance of power between retailers and optometrists. More to the point, Wal-Mart was on notice that the TOA prohibited setting or attempting to influence office hours. But Wal-Mart, a

sophisticated party, contracted with optometrists nonetheless. Given that it was on notice of the TOA when it began contracting with optometrists, Wal-Mart's liability was not "patently nonsensical." *Id.*

Wal-Mart's question about whether, consistent with the absurdity canon, a retailer can order an optometrist to keep his store clean is outside the bounds of what we need to decide to resolve this case. There is already a clear line between influencing office hours and influencing office cleanliness. *Only influencing office hours is explicitly listed in the TOA as a method of attempting to control an optometrist, and so is expressly prohibited.* Coming up with an overarching interpretation of what an "attempt to control" encompasses is not necessary.

Third, when a court invokes the absurdity canon, it is attempting to divine a legislative intent that the plain meaning of the statute does not reflect. When a legislature uses an "amorphous term" we may sometimes have "no choice but to speculate about [legislative] intent." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). But such speculation is less necessary when the legislature "has textually narrowed the scope of [a] term." *Id.* The Texas Legislature has narrowed "control or attempt to control" to specifically include "setting or attempting to influence . . . office hours." "Control or attempt to control" is thus a narrowly defined rather than amorphous term. Consequently, we decline to speculate about legislative intent by invoking the absurdity canon.

Wal-Mart is asking us to winnow from a state statute its plain meaning. Because of federalism concerns, invoking the absurdity canon here is especially dangerous because it would involve a federal court's "encroaching on the [Texas] Legislature's function to decide what the law should be." *Fitzgerald*, 996 S.W.2d at 866.

D.

With that said, we turn to the plain meaning of the TOA. The TOA expressly prohibits a retailer's "attempt to control the . . . manner of practice" of an optometrist. TEX. OCC. CODE § 351.408(c). "Control or attempt to control" is minutely defined in Section 351.408, and includes "setting or attempting to influence the . . . office hours of an optometrist." *Id.* at § 351.408(b).

No. 12-40854

Under the plain language of the TOA, a rational jury could have found that Wal-Mart's leases and conduct constituted "an attempt to control the . . . manner of practice" of an optometrist by coercing him into working certain hours. *Id.* at § 351.408(c). The jury's verdict was supported by the optometrists' testimony that they understood themselves to be obligated to work the hours in the lease and that Wal-Mart pressured three plaintiffs to increase their hours when they renewed their leases.

Because the plaintiffs' monetary award implicates important issues of Texas law as to which there is no controlling Texas Supreme Court precedent, we unanimously submit the following certified questions to the Supreme Court of Texas.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT TO THE TEXAS CONSTITUTION ART. 5 § 3-C AND TEXAS RULE OF APPELLATE PROCEDURE 58.1.

## I.     Style of the Case: Parties and Counsel

The style of the case is Doris Forte, O.D., on behalf of herself and all other similarly situated persons; Bridget LeeSang, O.D.; David Wiggins, O.D; John Boldan, O.D., Plaintiffs–Appellees v. Wal-Mart Stores, Incorporated, Defendant–Appellant, Case No. 12–40854, in the United States Court of Appeals for the Fifth Circuit, on appeal from the judgment of the United States District Court for the Southern District of Texas.   Federal jurisdiction is premised on diversity of citizenship, 28 U.S.C. § 1332.

The names of all the parties to the case, each of whom is represented by counsel, and the respective names, addresses, and telephone numbers of their counsel, are as follows:

- Doris Forte, O.D., on behalf of herself and all other similarly situated persons; Bridget Leesang, O.D.; David Wiggins, O.D.; John Boldan, O.D., the plaintiffs in the district court and the appellees in this

No. 12-40854

Court, are represented by Mark Clyde Burgess of Boyd, Poff & Burgess, L.L.P., 2301 Moores Lane, Texarkana, TX  75503, Tel. 903-838-6123; Russell S. Post of Beck Redden, L.L.P., 1221 McKinney Street, Suite 4500, Houston, TX   77010, Tel. 713-951-3700; Jose Antonio Canales of Canales & Simonson, P.C., 2601 Morgan Avenue, Corpus Christi, TX   78405, Tel. 361-883-0601; and William R. Peterson of Beck Redden, L.L.P.,  1221 McKinney Street, Suite 4500, Houston, TX  77010; and

- Wal-Mart Stores, Incorporated, the defendant in the district court and the appellant in this Court, is represented by James C. Ho of Gibson, Dunn & Crutcher L.L.P., 2100 McKinney Avenue, Dallas, TX 75201, Tel. 214-698-3100; Ashley E. Johnson of Gibson, Dunn & Crutcher, L.L.P., 2100 McKinney Avenue, Suite 1100, Dallas, TX 75201, Tel. 214-698-3111; and Prerak Shah of Gibson, Dunn & Crutcher, L.L.P., 2100 McKinney Avenue, Suite 1100, Dallas, TX 75201, Tel. 214-698-3193.

## II.    Statement of the Case

### A.    Background

Since 1992, Wal-Mart Stores, Inc. ("Wal-Mart") has leased space in its Texas stores to optometrists, typically receiving as rent ten percent of the optometrists' gross income.  Through 1995, the standard lease Wal-Mart used in Texas required optometrists to remain open for at least forty-five hours a week.  Failure to abide by the terms of the lease put the optometrist in default, which, at Wal-Mart's discretion, could trigger a liquidated damages provision of $200 per day of violation.  Although none of the four plaintiffs here leased space at Wal-Mart when the forty-five hour requirement was in effect, that requirement set the stage for the events that followed.

7

In 1995, the Texas Optometry Board ("the Board"), a state agency regulating optometry, notified Wal-Mart that setting required hours violated the TOA, which prohibits "control[ling] . . . the practice of an optometrist" by "attempting to influence the . . . office hours of an optometrist." Tex Occ. Code § 351.408(b), (c). Wal-Mart then eliminated the forty-five hour requirement and revised its lease to read "[t]he following is the LICENSEE'S representation of the weekly hours of coverage to the patients," which was followed by a table in which the optometrists could handwrite their hours. The lease further provided that Wal-Mart "shall retain no control whatsoever over the manner and means by which the LICENSEE performs his/her work."

In 1998, after Wal-Mart revised its lease, the Board stated in a newsletter addressed to the public at large that leases that even referenced hours violated the TOA. In 2003, the Board wrote Wal-Mart that it had learned that Wal-Mart had told an optometrist that customers were requesting longer hours. The Board warned that, although it was aware that Wal-Mart had also stated "the ultimate decision regarding the hours and fees for eye examinations are made by the doctors," even informing optometrists of customer requests for longer hours violated the TOA. Nonetheless, Wal-Mart continued requiring that optometrists provide the hours representations in its leases.

## B.    Procedural History

In 2007, the dispute culminated in this suit when Doris Forte sued Wal-Mart in the United States District Court for the Southern District of Texas for alleged violations of the TOA. Eleven plaintiffs moved to certify a class action of four hundred optometrists. The district court, however, denied the certification and instead designated four plaintiffs who would go to trial. These plaintiffs were Drs. Doris Forte, John Boldan, David Wiggins, and Bridget LeeSang.

No. 12-40854

In 2009, while the suit was pending, Wal-Mart deleted the hours representation provision from its leases and sent a letter to Texas lessees stating that it would not enforce this provision.

The four plaintiffs' claims were tried to a jury in August 2010. The judge instructed the jury that the plaintiffs "do not claim they have suffered any physical or economic damages [and] only seek to recover civil penalties." Wal-Mart's primary argument in the district court was that the hours representation provision was not enforced, and that optometrists could change their hours if they desired. Wal-Mart also argued that the provision was not a condition of the lease because it was unenforceable.

The four plaintiff optometrists testified that they believed that the hours representation provision was binding and enforceable. All four plaintiffs conceded, however, that the hours were set at an acceptable level. Three of the plaintiffs renewed their leases, some multiple times, but when renewing all felt pressured to increase office and work hours.

The jury sided with the plaintiffs, awarding them $3,953,000 in civil penalties. This award was the maximum possible under the TOA—$1,000 per day that each plaintiff operated under his or her lease. The plaintiffs were also awarded $763,854 in attorneys' fees. As a point of reference, the evidence showed that the gross annual income of the optometrists was in the neighborhood of $200,000.

Post-verdict, Wal-Mart renewed its motion for a judgment as a matter of law (JMOL). The district court denied the motion with respect to liability but entered a remittitur reducing the civil penalty to $400 a day. *Forte v. Wal-Mart Stores, Inc.*, No. CC-07-155, 2011 WL 1740182, *17 (S.D. Tex. May 4, 2011). The reduced award totaled $1,396,400, to which the plaintiffs consented.

9

Wal-Mart now appeals the denial of its JMOL motion, asserting that the judgment should be reversed or vacated. Alternatively, Wal-Mart seeks further remittitur, and also urges that the civil penalty award as remitted by the district court violates both Texas's cap on exemplary damages and Due Process.

### III.   Legal Issues

To decide whether the plaintiffs can recover the award of civil penalties, the Court must interpret two statutes—the TOA and Chapter 41. Chapter 41, a tort reform statute, "applies to any action in which a claimant seeks damages relating to a cause of action." Tex. Civ. Prac. & Rem. Code § 41.002(a). Relevant here, Chapter 41 limits the recovery of exemplary damages, defined as "any damages awarded as a penalty or by way of punishment but not for compensatory purposes." *Id.* § 41.001(5). Exemplary damages are neither economic nor noneconomic in nature and include "punitive damages." *Id.* Critically, a plaintiff cannot recover exemplary damages unless the plaintiff *also* recovers *actual* damages. *Id.* § 41.004(a).

Here, the district court instructed the jury that the plaintiffs were not seeking any actual damages as a result of Wal-Mart's violations of the TOA. Instead, the plaintiffs were only seeking a civil penalty award. Thus, Wal-Mart argues: (a) the plaintiffs' action for civil penalties under the TOA was a damages action for purposes of Chapter 41; and (b) the plaintiffs' recovery is barred because they received an award of civil penalties, which is a form of exemplary damages, without recovering actual damages.

Both aspects of Wal-Mart's argument turn in part on the construction of the TOA, which authorizes these plaintiffs to seek the civil penalties at issue here. Under the TOA, "[a] person injured as a result of a violation of Section 351.408, including an optometrist who is a lessee of a manufacturer, wholesaler, or retailer, is entitled to the remedies in Sections 351.602(c)(2),

No. 12-40854

351.603(b), and 351.604(3)." Tex. Occ. Code § 351.605. Section 351.605 authorizes the plaintiffs to seek multiple types of relief. Two types of relief are relevant here. First, the plaintiffs may seek "injunctive relief or damages plus court costs and reasonable attorney's fees . . . ." *Id.* § 351.602(c)(2). Second, the plaintiffs may pursue an action for "a civil penalty not to exceed $1,000 for each day of a violation plus court costs and reasonable attorney's fees." *Id.* § 351.603(b).

## A.

The first, and primary, issue is whether the plaintiffs' action for civil penalties under the TOA is an action for damages for purposes of § 41.002(a). Although the plaintiffs concede that *some* penalties are damages under the meaning of the TOA, they argue that statutory penalties similar to those in the TOA are not.

First, the plain language of Chapter 41, read in conjunction with the TOA, suggests that the plaintiffs' action is an action seeking damages. Chapter 41 applies explicitly to *any action* for damages. Tex. Civ. Prac. & Rem. Code § 41.002(a). The use of the term "any" coupled with the broad, general term "damages" suggests that Chapter 41 applies to most civil recoveries. Indeed, the Texas Supreme Court has defined the term "damages," standing alone, to broadly mean "'compensation in money imposed by law for loss or injury.'" *Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex. 1992) (quoting Webster's Ninth New Collegiate Dictionary 323 (1989)). Similarly, *Black's Law Dictionary* defines damages as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." *Black's Law Dictionary* 445 (9th ed. 2009). The plaintiffs' cause of action authorizes a private plaintiff to seek civil penalties only if he or she is "injured as a result of a violation of Section 351.408 . . . ." Tex. Occ. Code § 351.605.

11

The Texas Supreme Court has not decided whether a statutory penalty such as the penalty in the TOA falls within the meaning of the clause "any action in which a claimant seeks damages relating to a cause of action." Tex. Civ. Prac. & Rem. Code § 41.002(a). If damages is given a broad meaning, however, the plain language of Chapter 41 suggests that the civil penalties be treated as damages. Thus, Wal-Mart advances a credible interpretation of Chapter 41 based on the plain language of both statutes, which controls if it is unambiguous. *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004) ("If the statutory text is unambiguous, a court must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results.").

Nonetheless, the plaintiffs point to several deficiencies with this interpretation. First, the structure of the TOA suggests that civil penalties are not a form of damages. One TOA provision authorizes recovery of damages and injunctive relief, whereas a separate provision allows for recovery of statutory penalties. Tex. Occ. Code §§ 351.602(c)(2), 351.603(b). Because the TOA addresses damages and civil penalties in separate statutory provisions, the TOA arguably recognizes that civil penalties form a category of monetary relief that is distinct from damages. Additionally, the TOA's definition of damages may trump even an unambiguous definition of damages in Chapter 41 because the TOA is a specific statute that addresses the issue in this appeal, whereas Chapter 41 is a more general statute. *See Tex. Appleseed v. Spring Branch Indep. Sch. Dist.*, 388 S.W.3d 775, 779 (Tex. App.–Houston 2012) ("It is a common statutory interpretation rule that specific provisions control over general provisions." (citing Tex. Gov't Code Ann. § 311.026 (Vernon 2005)).

Relatedly, the Texas Supreme Court has recognized that not all recoveries of monetary sums are damages under Texas law. In the context of analyzing whether attorney's fees were compensatory damages under a Texas

tort reform statute, the Texas Supreme Court observed that "[n]ot every amount, even if compensatory, can be considered damages." *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 173 (Tex. 2013). Although the court in that case did not address civil penalties, its assessment of attorney's fees suggests that the Texas Supreme Court could conclude that such penalties are not damages. Indeed, the Texas Supreme Court has previously distinguished statutory penalties from damages, observing that a plaintiff "did not sue for damages under [a statute], but undertook to maintain this suit on his own behalf and on behalf of the State of Texas, although the Attorney General had refused to join him in the suit." *Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943). Of course, the Supreme Court's decision in *Agey* predated the passage of Chapter 41.

In a similar vein, the plaintiffs point out that civil penalties differ from a typical damage award in several respects. Private litigants may pursue statutory penalties only in limited circumstances, as "[g]enerally, a statutory penalty or fine is not payable to a private litigant." *Brown v. De La Cruz*, 156 S.W.3d 560, 564 (Tex. 2004). Additionally, penalty statutes are strictly construed, and a person seeking such penalties must fall clearly within the ambit of the statute. *Id.* The limited nature of these remedies and their strict construction suggests that statutory civil penalties are a unique breed of remedies that are not damages as the term is commonly understood. Because the Texas Legislature has explicitly authorized private litigants to assist the State with its law enforcement obligations in these limited circumstances, the Texas Supreme Court reasonably could conclude that a civil penalty award falls outside the tort reform context to which Chapter 41 applies.

In sum, we conclude that this issue is amenable to certification to the Texas Supreme Court. We recognize the practical concern that both private plaintiffs and state and local governments may be hindered in seeking civil

13

penalties if those penalty awards are subject to the limitations in Chapter 41. Similarly, we recognize that the Texas Legislature has enacted such penalty regimes to allow public and, in some cases, private litigants to enforce Texas law. Conversely, we acknowledge that Chapter 41 by its terms applies broadly to most civil actions, and we are reluctant to read an exception into that statute that does not flow unambiguously from its text. Thus, we certify the issue so that the Texas Supreme Court may decide the appropriate meaning of Tex. Civ. Prac. & Rem. Code § 41.002(a).

**B.**

Although the plaintiffs will prevail if the monetary award they seek is not damages within the meaning of § 41.002(a), they may also prevail if the award of civil penalties in this case falls outside the definition of exemplary damages in § 41.001(5). Chapter 41 only prohibits a recovery of *exemplary* damages if actual damages are not awarded. *Id.* § 41.004(a). The Texas Supreme Court has not decided whether a statutory civil penalty award under the TOA falls within the meaning of exemplary damages.

The Texas Supreme Court may find several ambiguities in Chapter 41's definition of exemplary damages. First, exemplary damages only encompass *damages* that are awarded as a penalty. *Id.* § 41.001(5). As the Court has already explained in Part III.A., *supra*, the Texas Supreme Court has not decided whether statutory civil penalties under the TOA are damages, the answer to which will affect the determination of whether the plaintiffs' monetary award is a form of exemplary damages. Second, even if the TOA's statutory penalties are damages, it is not entirely clear that they are "awarded as a penalty or by way of punishment but not for compensatory purposes." *Id.* Wal-Mart points out that the TOA refers to the award in such a case as a "civil penalty." Tex. Occ. Code § 351.603(b). The plaintiffs observe, however, that the definition of exemplary damages explicitly "includes punitive damages."

14

No. 12-40854

Tex. Civ. Prac. & Rem. Code § 41.001(5).  Thus, the Texas Supreme Court could read the inclusion of punitive damages as illustrative of the types of typical tort awards that § 41.004(a) covers.  A statutory civil penalty in the TOA, although called a penalty for purposes of the TOA, may not be awarded as a penalty within the meaning of Chapter 41.

Indeed, the Texas Supreme Court could distinguish statutory civil penalties from exemplary damages on the basis that statutory civil penalties are tailored to aid the State in its law enforcement role.  On one hand, statutory civil penalties are similar to punitive damages because, like punitive damages, statutory penalties "deter and punish culpable conduct."  *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 238 (Tex. 2011) (addressing the purpose of punitive damages).  Nonetheless, statutory penalties also differ from punitive damages because statutory penalties have been authorized by the Texas Legislature to aid in *law enforcement*.  *See State v. Harrington*, 407 S.W.2d 467, 474 (Tex. 1966) (observing that a statutory penalty regarding violations of various rules "is a civil penalty statute enacted for the primary purpose of promoting and encouraging law enforcement and deterring violations of the rules").  Thus, the Texas Supreme Court could conclude that statutory penalties are a form of damages, but they cannot be considered *exemplary* damages.

As with the first issue, the Texas Supreme Court has not addressed whether statutory civil penalties, such as the penalties under the TOA, are a form of exemplary damages.  Additionally, the Court has not addressed the interplay between § 41.002, which applies the limits of Chapter 41 to any action seeking damages, and § 41.004, which limits the award of exemplary damages.  Because it is possible that the plaintiffs here could be seeking damages under § 41.002 but not exemplary damages under § 41.004, we certify a related question on this issue to the Texas Supreme Court.

15

## IV.  Questions Certified

For the reasons discussed above, we hereby certify the following determinative questions of Texas law to the Supreme Court of Texas:

1.    Whether an action for a "civil penalty" under the Texas Optometry Act is an "action in which a claimant seeks damages relating to a cause of action" within the meaning of Chapter 41 of the Texas Civil Practice and Remedies Code.  In other words, are civil penalties awarded under Tex. Occ. Code § 351.605 "damages" as that term is used in Tex. Civ. Prac. & Rem. Code § 41.002(a).

2.    If civil penalties awarded under the Texas Optometry Act are "damages" as that term is used in Tex. Civ. Prac. & Rem. Code § 41.002(a), whether they are "exemplary damages" such that Tex. Civ. Prac. & Rem. Code § 41.004(a) precludes their recovery in any case where a plaintiff does not receive damages other than nominal damages.

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified.