# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 8, 2024

Lyle W. Cayce
Clerk

_____

No. 23-20588

_____

Texas Truck Parts & Tire, Incorporated,

*Plaintiff—Appellee*,

*versus*

United States of America,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-2055

_____

Before Wilson, Douglas, *Circuit Judges*, and Vitter, *District Judge*.[*]
Dana M. Douglas, *Circuit Judge*:

Plaintiff-Appellee, Texas Truck Parts & Tire, Incorporated ("Texas Truck"), is a wholesaler and retailer of truck parts and tires based in Houston, Texas. From 2012 to 2017, Texas Truck purchased tires from Chinese manufacturers, which shipped and delivered the tires to Houston.

_____

[*] United States District Judge for the Eastern District of Louisiana, sitting by designation.

No. 23-20588

The Internal Revenue Code imposes tax liability against the manufacturer, producer, or importer of taxable tires for the sale thereof. I.R.C. § 4071(a). Additionally, if a manufacturer, producer, or importer delivers a tire to its own store or outlet, it is liable for the tire's tax in the same manner as if it had been sold when delivered. I.R.C. § 4071(b). Upon receipt of these tires, Texas Truck, under the impression that the Chinese manufacturers were the importers of the tires under applicable law, failed to file quarterly excise tax returns under IRS Form 720 or to pay any excise tax on the tires. The IRS audited Texas Truck and determined that it, not the Chinese manufacturers, was the importer of the tires and therefore owed approximately $1.9 million in taxes. Texas Truck paid a portion of these taxes and filed an administrative claim for a refund. After the IRS failed to act on the claim, Texas Truck filed suit seeking a refund; the Government counterclaimed for the balance of taxes owed. The district court determined on summary judgment that the Chinese manufacturers imported the tires and were therefore liable for the tax. The Government appeals.

The instant case presents an issue novel to this circuit: When a party orders taxable articles to be shipped to the United States for resale and is otherwise uninvolved in the importation process, is that party the importer? We hold that they are when they derive almost all of the benefits of the importation. While we agree with the district court that Texas Truck did not "bring" the tires to the United States as the term is used in the applicable Treasury regulation, we find that it erred by failing to consider whether Texas Truck was the beneficial owner under the regulation. We further hold that Texas Truck was, in fact, the beneficial owner, and therefore liable for the excise tax. Accordingly, we REVERSE.

I

A

No. 23-20588

Texas Truck is a wholesaler and retailer of truck parts for semi-tractors and semi-trailers. In 2014, Texas Oil & Filter Wholesale LLC purchased all of Texas Truck's assets and continued doing business under Texas Truck's name.[1] From 2012 to 2017, Texas Truck purchased tires wholesale from Chinese manufacturers,[2] which shipped the tires to Texas Truck in Houston. The Chinese manufacturers, each of which had local affiliate companies, also had local sales agents who would solicit orders from Texas Truck. When Texas Truck placed orders, the Chinese manufacturers would send an invoice and, upon receipt of payment, would arrange for the tires to be transported from China to the United States, clear U.S. Customs, and be delivered to Texas Truck's doorstep in Houston.

Texas Truck alleges that throughout this process, the manufacturers' agents represented to it that the quotes for the tires included payment of the federal excise taxes. Indeed, some invoices show that the Chinese manufacturers made such representations. However, others explicitly excluded federal excise tax, and still others failed to mention federal excise tax. There is no suggestion by either party that the Chinese manufacturers ever paid any excise tax with respect to the tires.

As the tires entered the United States, the accompanying Customs and Border Protection Form 7501 often indicated that Texas Truck was the ultimate consignee of the tires and the Chinese manufacturers were the importers of record. In line with the designation on this form that the Chinese

---

[1] For simplicity, we refer to both collectively as "Texas Truck."

[2] These manufacturers include Omni United PTE(S), Ltd.; Shandong Homerun Tires Co., Ltd.; Maxon Int'l Co. Ltd.; Weifang Haichuan Imp. & Exp.; and Qingdao Lai Jie Rubber Trade (Hongtyre). Although Omni is located in Singapore, its tires were shipped from China. We join the parties and the district court in referring to the manufacturers collectively as "the Chinese manufacturers."

3

manufacturers were the importers, Texas Truck did not file quarterly excise tax returns or pay excise taxes on the tires for those five years. In 2018, the Government audited Texas Truck and, in 2020, assessed excise taxes under I.R.C. § 4071 for each quarter in which it failed to pay excise taxes, totaling $1,932,643.

Texas Truck took issue with this assessment. Instead of paying the full amount, it paid $2,100 ($100 per quarter), and later an additional $250,000, and filed an administrative claim for a refund, upon which the IRS failed to act. Consequently, Texas Truck filed suit seeking a refund, among other relief, and the Government counterclaimed for the balance of the taxes owed. The parties stipulated to all pertinent facts, leaving only the issue of whether Texas Truck is the importer under federal tax laws.

Eventually, the parties cross-moved for summary judgment. The district court, facing no issue of material fact, granted summary judgment for Texas Truck, holding that the Chinese manufacturers were the importers. In support of its decision, the court considered I.R.C. § 4071 and the definition of "importer" provided in Treas. Reg. § 48.0-2(a)(4)(i), as well as relevant dictionary definitions of determinative terms. The Treasury regulation's definition, described at length below, provides that an importer is either: (1) the entity that "brings" a taxable article into the United States, including withdrawing such articles from customs bonded warehouses; or (2) the beneficial owner of the taxable article, if the entity that brings the article under (1) is merely a nominal importer. Treas. Reg. § 48.0-2(a)(4)(i) (1978).

The district court considered the first half of this definition—whether Texas Truck brought the tires to the United States—but, without explanation, failed to consider the second half—whether Texas Truck was the beneficial owner and the Chinese manufacturers merely nominal importers. It ultimately determined that Texas Truck was not the importer

because importation requires "undertaking the actual action"—in this case, moving a tangible item from one place to another—not "some more remote cause."

On appeal, the Government asks that we reconsider the district court's finding that, for the purposes of taxation, the Chinese manufacturers "imported" the tires.

## II

The standard of review on summary judgment rulings is de novo. *Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 215-16 (5th Cir. 2024). Likewise, we review a district court's interpretation of a statute or regulation de novo. *Teemac v. Henderson*, 298 F.3d 452, 456 (5th Cir. 2002).

## III

### A

I.R.C. § 4071(a) imposes a tax on "tires sold by the manufacturer, producer, or importer thereof." Rules and regulations relating to this section are promulgated by the Secretary of the Treasury. I.R.C. § 7701(11). In 1978, the Secretary of the Treasury issued the following definition of "importer":

> An "importer" of a taxable article is any person who brings such an article into the United States from a source outside the United States, or who withdraws such an article from a customs bonded warehouse for sale or use in the United States. If the nominal importer of a taxable article is not its beneficial owner (for example, the nominal importer is a customs broker engaged by the beneficial owner), the beneficial owner is the "importer" of the article for purposes of chapter 32 and is liable for tax on his sale or use of the article in the United States.

Treas. Reg. § 48.0-2(a)(4)(i).

No. 23-20588

Read plainly, the regulation provides for two scenarios in which an entity may be an "importer" under the Internal Revenue Code. First, an entity imports if it brings a taxable article into the United States or withdraws it from a customs bonded warehouse after delivery. This definition is simple enough. However, it leaves a gap: What happens when a foreign entity distributes taxable goods to a domestic entity, sometimes to the domestic entity's doorstep, pursuant to a purchase order? The regulation fills that gap by providing that, if the foreign entity is the "nominal importer," then the tax is imposed upon the "beneficial owner," or the domestic entity. *See id.*

For the reasons that follow, we agree with the district court that the term "brings" does not include the expansive definition offered by the Government. However, we find that the Chinese manufacturers were nominal importers and that Texas Truck was the beneficial owner, thus rendering it liable for the excise taxes.

B

The Government first challenges the district court's definition of the term "brings" under the Treasury regulation. It requests that we read the term broadly, such that it would include instances in which a domestic entity brings about—or is the external cause of—the importation. Below, the district court found Texas Truck's definition—carrying a tangible item from one place to another—more logical.

As is often the case, we first look to the ordinary and plain language understanding of the term. At the time of the regulation's promulgation, Webster's New Collegiate Dictionary defined "bring" as follows: "to convey, lead, carry, or cause to come along with one toward the place from which the action is being regarded; to cause to be, act, or move in a special way." WEBSTER'S NEW COLLEGIATE DICTIONARY 139 (1973). One considering the ordinary usage of the term "brings" would determine that

6

the district court's conclusion—that it means the transportation of a tangible item from one place to another—is logical.

It is true, as the Government asserts, that textualism should not represent strict constructionism providing for a "narrow, crabbed reading of a text." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 355-56 (2012). Nor should it, however, provide for an illogically broad definition. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."). Indeed, considering the broader regulatory and statutory scheme, it seems clear that the term "brings" is not meant to encompass the Government's proposed definition—one "who 'cause[d]' or 'ma[d]e' the tires 'to come along,' 'come,' or 'move,' from China to Texas." In determining the scope of the term "brings," the development of the regulation is informative.

First, as a general matter, the interpretation advanced by the Government is typically used in the sense of bringing something about—that is, Texas Truck brought about the importation of the goods by placing an order. But this reading, without limit, is exceptionally broad, and an unnecessary expansion of the plain language.[3] The Government argues that under too strict of an interpretation, the shippers themselves would be the

---

[3] Support is found again in Webster's New Collegiate Dictionary. The definition of "bring" supported by the Government— "to cause to exist or occur"—is accompanied by the following uses: produce ("winter will bring snow and ice"); effect or result in; institute ("bring legal action"); and adduce ("bring an argument"). Webster's New Collegiate Dictionary 139 (1973). Meanwhile, "bring about" received its own definition: "to cause to take place." *Id.*

importers. However, this argument overlooks the commercial reality of the transaction: here, the shippers acted as agents of the Chinese manufacturers.

Second, the Treasury regulation clearly incorporated the language of IRS Revenue Ruling 56-409. There, the IRS concluded that withdrawing articles from a customs bonded warehouse fell within the definition of "importer." Rev. Rul. 56-409, 1956-2 C.B. 796. The regulation's inclusion of this provision suggests a narrow reading of the term "brings." Under the Government's definition, if a party were to withdraw a taxable article from a customs bonded warehouse, surely it would be the importer—after all, it induced importation by withdrawing the article from the warehouse. This would render the inclusion of the warehouse provision superfluous, a conclusion which is to be avoided. *See United States v. Lauderdale County, Miss.*, 914 F.3d 960, 966 (5th Cir. 2019) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

Third, the Treasury regulation tracks with Revenue Ruling 68-197. There, the IRS, without the current Treasury regulation, found that the "importer" is "the person who as principal and not as agent arranges for, *or is the inducing and efficient cause of*, the goods being brought into the United States for purposes of sale or use by him." Rev. Rul. 68-197, 1968-1 C.B. 455 (emphasis added). This concept—that the importer may be the party that induces importation—is covered by the nominal importer provision. It clearly accounts for situations in which the domestic entity does not physically bring in the article, but contracts for its shipment to the United States and receives all accompanying benefits. If we were to adopt such a broad reading of "brings," the nominal importer language would also be rendered superfluous.

Accordingly, we reject the Government's proposed definition. The term "brings" in the Treasury Regulation is designed to have a narrower

No. 23-20588

definition than is proposed here. We do not, however, limit the definition of "importer" any more than necessary.[4]

## C

Although Texas Truck did not bring the tires into the United States, it was the beneficial owner of the tires, and therefore falls within the second sentence of the definition. As described above, where an entity is merely a "nominal importer," importing the good for the "beneficial owner" of a taxable article, the beneficial owner is liable for the excise tax. Treas. Reg. § 48.0-2(a)(4)(i).

### 1

Before we venture into the merits of whether the Chinese manufacturers were merely nominal importers under the regulation, we must determine whether the issue was sufficiently preserved at the district court. We believe it was.

---

[4] While we agree with the district court's ultimate interpretation of the term "brings," we pause to note that it relied on two unpersuasive authorities in reaching its decision. First, it relied on a Supreme Court opinion from 1923 that interpreted the Eighteenth Amendment of the United States Constitution, holding that importation consists of "bringing an article into the country from the outside. If there be an actual bringing in it is importation regardless of the mode in which it is effected." *Cunard S.S. Co. v. Mellon*, 262 U.S. 100, 121-22 (1923). We are not persuaded that this definition of importation—stemming not from an interpretation of the tax code but from an analysis of a since-repealed amendment—should influence the term's definition here. Second, it relied upon Customs and Border Protection's definition of "importer of record." As the Government points out, interpretation of a statute or regulation from one agency does not bind another's interpretation of that material. *Bombardier Aerospace Corp. v. United States*, 831 F.3d 268, 275-76 (5th Cir. 2016). The Secretary of the Treasury has provided a definition of the term "importer." We need not rely on various outside definitions of that same term to reach our outcome. We need only analyze the statute, regulation, and related case law.

Texas Truck argues that the United States waived this argument by failing to assert before the district court that this portion of the definition was applicable or controlling. This, however, misses the mark. First, the Government incorporated the entire definition of the Treasury regulation in its summary judgment briefing—including the "nominal importer" language. The district court simply did not analyze the issue.

Second, the Government's argument before the district court addressed the second half of the regulation. Specifically, the Government summarized its argument as follows: "Plaintiff was the first purchaser resident in the United States who arranged, as principal and not as agent, for the tires to be brought into the U.S., and was *also the inducing and efficient cause of the tires being brought into the U.S.*" Indeed, it cited authority supporting a substance-over-form analysis. For instance, it relied on Revenue Ruling 67-209, which requires the adjudicator "to look through the form to the substance of the transaction to determine whether the nominal importer actually functions as a typical import merchant, or merely serves in a representative capacity, charged only with the responsibility of bringing the goods into the commerce of the United States." Rev. Rul. 67-209, 1967-1 C.B. 297. Ultimately, the Government concluded that while Texas Truck was the first purchaser resident in the United States, it was *also* "the inducing and efficient cause of the tires being brought into the U.S." As described at length above, "[t]his concept—that the importer may be the party that induces importation—is covered by the nominal importer provision." *See* Part III.B, *supra.*

In our view, both the issue and supporting authority were raised below, such that the district court had an obligation to consider the entire regulation. The district court itself noted that "the Government doesn't really attempt its own textual argument," and stated that "[n]*either party* argues dictionary definitions or common parlance with respect to the words

importer and brings." The court acknowledged that the Government instead cited several authorities that supported its contention that the excise tax should be charged against Texas Truck. Many of these authorities supported the "inducing and efficient cause" rationale. This, taken together, supports a finding that the issue was sufficiently presented below.[5]

Accordingly, we consider the Government's nominal importer argument below.

2

Texas Truck provides little support for its position that the Chinese manufacturers were not nominal importers, instead arguing that there is no definition in the regulation or statute for "nominal importer." In contrast, the Government provides substantial briefing regarding the Supreme Court's opinion in *Hooven & Allison Co. v. Evatt*, which defined importation as "the inducing and efficient cause of bringing the merchandise into the country." 324 U.S. 652, 661 (1945), *overruled on other grounds by Limbach v. Hooven & Allison Co.*, 466 U.S. 353 (1984). Unlike *Cunard*, *Hooven*'s interpretation of "importation" was directly related to taxation and was mirrored in future revenue rulings. *See* Rev. Rul. 68-197, 1968-1 C.B. 455. It is clearly more relevant than *Cunard*'s interpretation of the Eighteenth Amendment.[6]

---

[5] Even if the issue was not sufficiently presented, the material facts in this matter are undisputed. "Because [the Government's] argument on appeal concerns a pure question of law, and all parties have had an opportunity to fully brief the question, the waiver rule does not bar our consideration of [the Government's] argument as now presented to us." *Forte v. Wal-Mart Stores, Inc.*, 780 F.3d 272, 276 (5th Cir. 2015).

[6] Texas Truck argues that *Hooven* has been overruled and that any reliance is therefore misplaced. We disagree. *Hooven* was expressly overruled "to the extent it espouse[d] [the original-package doctrine]." *Limbach*, 466 U.S. at 357, 361. The Supreme Court, however, only turned to that issue in Part II of its opinion, which discussed whether constitutional immunity protected importers from state taxation. *Hooven*, 324 U.S. at 666. Part I, meanwhile, merely discussed whether an entity was an importer. *Id.* at 661. We

No. 23-20588

*Hooven*'s thrust is that, in the field of taxation, substance governs over form. Such is indisputable, even if we were to consider *Hooven* unpersuasive. *See, e.g.*, *Chemtech Royalty Assocs. v. United States*, 766 F.3d 453, 460 (5th Cir. 2014) ("The starting point for our analysis is the cardinal principle of income taxation: A transaction's tax consequences depend on its substance, not its form." (quoting *Southgate Master Fund, L.L.C. ex rel. Montgomery Cap. Advisors, LLC v. United States*, 659 F.3d 466, 478-79 (5th Cir. 2011))); *Est. of Weinert v. Comm'r*, 294 F.2d 750, 755 (5th Cir. 1961) ("Tax law deals in economic realities, not legal abstractions." (quoting *Comm'r v. Sw. Expl. Co.*, 350 U.S. 308, 315 (1956))); *Gregory v. Helvering*, 293 U.S. 465, 470 (1935) (holding that a transaction fell outside of the statutory scope, and that "hold[ing] otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose"). This concept is memorialized in the regulation, which shifts tax liability from nominal importers—importers in form only—to beneficial owners—importers in substance.

Seemingly the only other appellate court to have considered this issue is the United States Court of Appeals for the Federal Circuit. Some background to that case is necessary. There, a New York tire sales and distribution entity (Terry Haggerty) purchased tires from a Canadian tire sales corporation (Canada Tire), which had visited Terry Haggerty to solicit sales. *Terry Haggerty Tire Co., Inc. v. United States*, 16 Cl. Ct. 620, 620 (1989) [hereinafter *Terry Haggerty I*], *aff'd*, 899 F.2d 1199 (Fed. Cir. 1990). Terry Haggerty contracted with Canada Tire for a price that included the cost of tires, freight charges, brokerage fees, and customs duty; whether excise taxes were included was disputed. *Id.* When the orders were placed, Canada Tire

---

consider Part I of *Hooven* to remain good law until the Supreme Court expressly overrules it.

either shipped tires or arranged to release tires that were stored in a customs bonded warehouse. *Id.* For maximum efficiency, Canada Tire had arranged for customs brokers to hold tires in a specific warehouse in Vermont. *Id.* Upon receiving orders, it would then arrange for the brokers to release tires to the United States purchasers. *Id.*

On appeal, the Federal Circuit affirmed the United States Claims Court's finding that Terry Haggerty imported the tires. It observed that the importer determination "depends on who is 'the inducing and efficient cause of the importation of the pertinent [goods].'" *Terry Haggerty Tire Co., Inc. v. United States*, 899 F.2d 1199, 1200 (Fed. Cir. 1990) (quoting *Imp. Wholesalers Corp. v. United States*, 368 F.2d 577, 585 (Ct. Cl. 1966)). Relying on Revenue Ruling 68-197, the court noted that "a foreign corporation which delivers articles to a United States buyer at the buyer's United States business facilities *is not the importer for purposes of the excise tax.*" *Id.* at 1201 (emphasis added). Rather, because Canada Tire "simply shipped tires from Canada or from a customs bonded warehouse to Haggerty on the latter's specific order," and because "Haggerty . . . was the inducing cause of the tires being brought into the United States," Haggerty was the importer. *Id.* It therefore affirmed the Claims Court's decision. *Id.* Below, the Claims Court had considered the nominal importer provision vital in rendering its opinion, stating that "although Canada Tire may physically 'bring' articles into the United States, it is the importer only in name, *i.e.*, the nominal importer. Canada Tire does not 'import' the goods into the United States and then attempt to sell them." *Terry Haggerty I*, 16 Cl. Ct. at 621.

Here, the facts are nearly identical, and we find the Claims Court's and the Federal Circuit's reasoning persuasive. Plain language suggests that a nominal importer is an entity that handles the transportation or logistics of importation on behalf of another entity that induced the importation and will derive almost all of the future benefits thereof. At the time the Treasury

13

regulation was promulgated, "beneficial" was defined as "[t]ending to the benefit of a person; yielding a profit, advantage, or benefit; enjoying or entitled to a benefit or profit," *Beneficial*, BLACK'S LAW DICTIONARY (rev. 4th ed. 1968), and "beneficial interest" meant "[p]rofit, benefit, or advantage resulting from a contract, or the ownership of an estate as distinct from the legal ownership or control," *Beneficial Interest*, BLACK'S LAW DICTIONARY (rev. 4th ed. 1968). An "equitable owner" was defined as "[o]ne who is recognized in equity as the owner of property, because the real and beneficial use and title belong to him, although the bare legal title is vested in another." *Equitable Owner*, BLACK'S LAW DICTIONARY (rev. 4th ed. 1968). Under this definition, "[t]here may therefore be two 'owners' in respect of the same property, *one the nominal or legal owner, the other the beneficial or equitable owner*." *Id.* (emphasis added). There is no doubt that in this instance, the Chinese manufacturers did not act as any more than nominal importers: they did not ship the tires to sell them or initiate new sales to purchasers in the United States. They shipped them to an American entity, which then sold the tires.[7] The Chinese manufacturers were importers in name only.[8]

---

[7] This is in stark contrast with Texas Truck's citation to technical advice memorandum issued by the IRS in 1998, in which a foreign entity was determined to be the importer because "twice a month the taxpayer br[ought] tires into the United States for sale to customers who [had] not placed a prior order." I.R.S. Tech. Adv. Mem. 98-18-002 (May 1, 1998). We need not consider the precedential value of this technical advice memorandum because it is readily distinguishable.

[8] The parties debate at what point title transferred from the Chinese manufacturers to Texas Truck. We do not find this relevant. "Whether title to the merchandise passes . . . at the time of shipment or only after its arrival in the United States is not controlling in this determination." Rev. Rul. 68-197, 1968-1 C.B. 455. To the extent the Chinese manufacturers retained title during the shipment process, they did so in name only: the sale had already occurred. Treas. Reg. § 48.0-2(a)(5) (defining "sale" as "an agreement whereby the seller transfers the property (that is, the title or the substantial incidents of

No. 23-20588

This reading, unlike the district court's, also complies with the Supreme Court's opinion in *Indian Motorcycle Co. v. United States*, which stated that "the requirement that the tax be paid by 'the manufacturer, producer, or importer' . . . is intended to be no more than a comprehensive and convenient mode of reaching all first or initial sales." *Indian Motorcycle Co. v. United States*, 283 U.S. 570, 574 (1931). Indeed, "[s]ubsequent sales, as where purchasers at first sales resell, are not taxed." *Id.* These excise taxes are designed "to impose a tax on the initial sale *made in the United States* by a manufacturer, producer, or importer." *Smith v. United States*, 319 F.2d 776, 778-79 (5th Cir. 1963) (emphasis added). Since Texas Truck conducted "the first sales of these articles in the United States, [it is] subject to the tax." *Id.* at 779. Our reading of the relevant law comports with this principle, providing that Texas Truck is liable for the excise tax upon the initial sale in the United States.[9]

## IV

Where possible, we should interpret a regulation's language plainly. However, we must consider the regulation in its entirety. The district court's failure to analyze the entire definition, therefore, was in error. Under the regulation's terms, we conclude that the Chinese manufacturers were the nominal importers of the tires, and that Texas Truck was the beneficial owner of the tires and thus the importer for excise tax purposes. Accordingly, we REVERSE the district court's order granting summary judgment to Texas Truck, RENDER judgment for the Government, and REMAND the

─────────────────────────

ownership) in goods to the buyer for a consideration called the price"). An agreement had been reached and payment tendered by the time shipment began.

[9] Neither party argues that the first sale in the United States was conducted by the Chinese manufacturers to Texas Truck by way of their local affiliates, nor did the district court address this issue. Accordingly, we do not consider that possibility.

No. 23-20588

matter to the district court to determine damages in accordance with this opinion.